668 So.2d 1335 (1996)
Machelle BRUNGART and Rodney C. Brungart, Individually and as Administrator of His Minor Child, Joshua Brungart,
v.
K MART CORPORATION.
No. 95 CA 0708.
Court of Appeal of Louisiana, First Circuit.
February 23, 1996.
Writ Denied May 3, 1996.
*1337 L.D. Sledge, Baton Rouge, for Plaintiffs, Machelle Brungart, Rodney C. Brungart, and Joshua Brungart.
Jack E. Truitt, Metairie, for Defendant, Kmart Corporation.
Before SHORTESS, PITCHER, PARRO, KUHN and FITZSIMMONS, JJ.
SHORTESS, Judge.
Machelle Brungart (plaintiff) sued Kmart Corporation (defendant) for personal injuries sustained while shopping at a Kmart store in Baton Rouge, Louisiana, on December 21, 1990. Her husband, Rodney C. Brungart (Brungart), joined in the suit seeking damages for loss of consortium for himself and their minor child, Joshua Brungart (Joshua). The case was tried to a jury, which found the accident was caused by the fault of both plaintiff and defendant. The jury apportioned fault 80% to plaintiff and 20% to defendant. It awarded plaintiff $12,000.00 for general damages and $8,751.35 for medical expenses. The claims of Brungart and Joshua for loss of consortium were rejected. The trial court rendered judgment in accordance with the verdict.[1]
Plaintiff then moved for a judgment notwithstanding the verdict (JNOV) on the issue of comparative negligence. Brungart, Joshua, and plaintiff (collectively, plaintiffs) moved for additur. The trial court granted the motion for JNOV and reapportioned fault 100% to defendant. However, it denied the motion for additur. Plaintiffs and defendant have both appealed.

I. FACTUAL BACKGROUND
Plaintiff was struck by a rug which fell off the shelf as she stood in the aisle of defendant's store. Plaintiff testified she went to the store to purchase a rug she had seen advertised. As she approached the rug aisle she noticed "rugs ... hanging off the shelf as though they were dripping off of the shelf." She entered the aisle and found the type rug she was seeking on a lower shelf. She did not recall how many shelves there were but stated there were "carpets over my head, and there were carpets kind of eye level, and there were lower carpets kind of on the second and bottom shelf." She stated there *1338 were rolled rugs behind the small rugs on the lower shelves and rolled oriental rugs on the top shelf.
Plaintiff testified she did not touch anything on the top or second shelves. She did, however, touch the rugs on the knee level shelf. She described her experience with the lower level rugs: "I can't remember if I really did anything to them, but they were starting to slip out from one another.... [A]s they were coming down, I was pushing them back, and as I would put one up the other one would fall down on the other side." She became frustrated and turned to leave. The rugs began to roll off the top shelf. One rug hit her head, knocking her to the floor, and a second rug fell on top of her.
Immediately after the accident, a woman summoned a manager and helped plaintiff up. According to plaintiff, the manager reshelved most of the rugs and left after refusing to ask the name of the woman who had summoned him. Plaintiff then asked to speak to a supervisor.
Bobby P. Templet, the store loss prevention manager at the time of the accident, testified he met plaintiff at the customer service desk and walked to the rug department with her. She told him "as she was moving some oriental rugs around one of the rugs started falling forward towards her." Templet stated he inspected the shelves and found no defects or problems with the way the display was made. He further noted nothing was broken or out of order. He testified his job duties included inspecting for possible problem areas. He had not seen any carpets on the verge of falling before the accident, and in his thirteen years of working for Kmart, he had not known of any rugs falling from shelves.
G. Bernand Chatham, a legal investigator hired by plaintiffs' attorney, testified he inspected the Kmart rug department twice, first on Christmas Eve, three days after the accident, and then eight days later, on New Year's Eve. He testified the rug department was in disarray on those two days.[2]

II. LAW

A. Judgment Notwithstanding the Verdict
In Anderson v. New Orleans Public Service, 583 So.2d 829 (La.1991), the supreme court reiterated the criteria first set forth in Scott v. Hospital Service District No. 1, 496 So.2d 270 (La.1986), to be used in determining whether a JNOV has been properly granted pursuant to Louisiana Code of Civil Procedure article 1811:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that *1339 question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.
583 So.2d at 832 (citation omitted).

B. Duties of the Parties
The trial court granted a directed verdict in this case on the issue of strict liability, and the case was presented to the jury based on negligence principles. Plaintiffs allege this accident is the result of defendant's employees negligently arranging the rugs for display and negligently maintaining the rug area.
Most cases regarding merchant liability arise in the context of a slip or trip and fall. In such cases, the merchant's general duty and burden of proof is set forth in Louisiana Revised Statute 9:2800.6. While this case did not involve a slip or trip and resulting fall (although plaintiff did fall after being struck by the dislodged carpet), we find the duty of a merchant to persons on his premises under general negligence law is summarized in Louisiana Revised Statute 9:2800.6(A):
A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
These principles require merchants to exercise reasonable care to protect those who enter the store and extend to keeping the premises safe from unreasonable risks of harm and warning persons of known dangers. Rodriguez v. New Orleans Public Serv., 400 So.2d 884 (La.1981); Retif v. Doe, 93-1104 (La.App. 4th Cir. 2/11/94), 632 So.2d 405, 408, writ denied, 94-1000 (La. 6/17/94), 638 So.2d 1095.
Store owners, however, are not required to ensure against all accidents that occur on the premises. They are not absolutely liable whenever an accident happens. A shopper has the duty of exercising reasonable care for his own safety and for the safety of those under his care and control. Retif, 93-1104 at 4, 632 So.2d at 408. A shopper who sees a potentially dangerous condition and fails to take reasonable precautions to avoid the danger may be found to have contributed to his own injuries. Doming v. K-Mart Corp., 540 So.2d 400, 404 (La.App. 1st Cir.1989).

III. ANALYSIS
The trial court found the evidence pointed so strongly and overwhelmingly in favor of plaintiff that reasonable minds could not have found she was at fault. In written reasons for granting the JNOV, the trial court stated:
[I]t was inconceivable for the jury to have found any fault on the part of the [plaintiff. Plaintiff's] attention had been directed to the display shelves in question. She did not touch any of the rugs and/or carpets on either the top shelf (from which the carpet which struck her fell) or the shelf [immediately] below.
Our review of the record convinces us the trial court erred in granting the JNOV. We find when all factual questions and reasonable inferences are resolved in favor of defendant, reasonable jurors could have reached the conclusion plaintiff was 80% at fault. The verdict is supported by the following facts. Templet stated that immediately following the accident, plaintiff told him she was moving some oriental rugs when one of them started to fall toward her. Plaintiff testified the oriental rugs were on the top shelf. Furthermore, plaintiff voluntarily entered an aisle which, by her own account, was in such disarray rugs were "dripping" off the shelf. Finally, plaintiff testified she pushed and shoved the smaller rugs back onto the shelves until she was in a state of frustration, movements which could have dislodged the rugs from the upper shelves.
*1340 Because we find the trial court erred in granting the JNOV, we must reverse that finding and reinstate the jury's verdict as to apportionment of fault.

IV. DAMAGES
Plaintiff contends the damages awarded to her were inadequate, and Brungart contends the trial court committed manifest error in failing to award damages for loss of consortium to him individually and on behalf of Joshua.

A. Adequacy of Plaintiff's Damages
The correct standard for appellate review of a damage award is clear abuse of discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). That discretion is vast and should rarely be disturbed unless it is, in either direction, beyond that which a reasonable trier of fact could assess under the particular circumstances. Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The jury fixed plaintiff's general damages at $12,000.00 and specifically found she did not suffer mental anguish or physical disability. Plaintiff contends this sum is an abuse of discretion.
Plaintiff testified she was in good health and was physically very active before the accident. After the accident she began to experience neck and back pain and headaches. She sought treatment from an orthopedic surgeon, Dr. F. Allen Johnston, and was referred to an orthodontist, who treated her for complaints related to her temporomandibular joint (TMJ). She testified the accident caused her much stress and fatigue. She stated, however, the only accident-related disability which prevented her from working was back pain during her pregnancy which lasted a couple hours. According to her testimony, Johnston told her at that time to limit the hours she worked each day.
Johnston first saw plaintiff on January 3, 1991. She reported she went to the emergency room the day after the accident and was given prescriptions and a neck brace. Her neck condition became painful, and she developed tension headaches. She also began having low back stiffness with pain radiating into her legs. Johnston's only objective abnormal finding was decreased range of motion in her neck. His initial impression was plaintiff had strained her neck and low back. He prescribed anti-inflammatory medications and muscle relaxants and recommended physical therapy. On January 16, 1991, plaintiff reported pain in her hands, arms, and low back. On January 30, 1991, she reported her low back symptoms had improved but her neck and upper back were still mildly symptomatic.
About two months later, when plaintiff returned complaining of neck pain, Johnston ordered an MRI of the cervical spine, which revealed no abnormalities. During May 1991, plaintiff reported her neck symptoms had improved, but she was experiencing tenderness in her neck with pain radiating into her scalp, which was sometimes associated with headaches. Johnston told plaintiff her only orthopedic problem was a soft tissue injury. He recommended she continue exercising at home.
Plaintiff returned to Johnston eight months later complaining of pain in her low back and left shoulder. She refused the cortisone injection which Johnston recommended. She returned in February 1992 and complained of neck pain. Johnston suggested she see an oral surgeon or dentist because he thought she might have TMJ syndrome. Thirteen months later plaintiff returned to Johnston complaining of back pain aggravated by activity. He recommended an MRI, which was essentially normal. She last saw Johnston in March 1993.
Johnston described plaintiff's back problem as a soft tissue injury. He stated that type injury usually heals within three weeks to three months. Although he believed plaintiff was truthful regarding her complaints of pain, he could find no objective reason for her continued complaints. He *1341 explained she had become pregnant shortly after the accident, and her pregnancy, childbirth, and lifting a small child were factors affecting her back pain. He stated plaintiff would not have any future impairment of her neck or back and did not need any significant future orthopedic treatment. Based on the history given by plaintiff, he opined her back and neck pain were caused by this accident.
Plaintiff was also treated by Dr. James R. McAndrew, an orthodontist, who first examined her in May 1991. He diagnosed internal derangement on the left side with recapture, a problem associated with TMJ syndrome, complicated by severe muscle spasms in the neck area. He stated internal derangement is usually associated with some type of trauma.
Plaintiff did not return to McAndrew until December 1991, when he performed standard diagnostic testing. In January 1992 she was provided splints for treatment of the internal derangement. Plaintiff saw McAndrew several times during 1992, during which time she complained of headaches, neck and upper back pain, fatigue, ringing and throbbing in the ears, and clicking of the jaw. She last saw McAndrew in October 1992, when she reported her symptoms were at an acceptable level. McAndrew determined her TMJ problem had been substantially alleviated, and she would need future treatment only if she developed other symptoms. At the time he was deposed, plaintiff had not returned for treatment in over a year.
After considering the evidence, we conclude the jury verdict of $12,000.00 in general damages was not an abuse of discretion. While the award might be considered low, we do not believe it abusively so considering the type injuries she sustained and the subjective nature of many of her complaints. We note that between May and December of 1991, she did not seek treatment from either Johnston or McAndrew. According to plaintiff's doctors, she has no permanent impairment and will probably not need any future treatment. Furthermore, she testified the accident did not disable her from working for more than a few hours. Thus, the jury may have concluded her pain was either not severe, or if it was initially severe, it did not remain so for an extended period of time.

B. Loss of Consortium
Plaintiffs contend the jury was manifestly erroneous in finding neither Brungart nor Joshua sustained a loss of consortium. If compensable damages, proven by a preponderance of the evidence and supported by the record, are not included in the judgment, the trier of fact has committed manifest error. Usé v. Usé, 94-0972, p. 14 (La. App. 1st Cir. 4/7/95), 654 So.2d 1355, 1363, writs denied, 95-1834, 95-1879 (La. 11/13/95), 662 So.2d 468.
In reviewing an award for loss of consortium, it is necessary to evaluate the elements which comprise a loss of consortium claim. "Consortium" means much more than sexual relations. The term also includes love and affection, society and companionship, support, aid and assistance, felicity, and performance of material services, e.g., uncompensated work around the home. A plaintiff need not prove every element to support an award for loss of consortium. La.C.C. art. 2315(B); Broussard v. Meaux, 94-313 (La. App. 3d Cir. 11/2/94), 649 So.2d 661, 669; Finley v. Bass, 478 So.2d 608, 614 (La.App. 2d Cir.1985).
Brungart testified the accident had adversely affected his life. After the accident he performed his wife's usual household chores because she was unable to do so. He stated she complained frequently about pain, and their sexual relations have been substantially affected.
Plaintiff and her husband testified regarding the effect of the accident on Joshua, who was one year old at the time of the accident. Brungart stated Joshua was not able to "roll around and play" with plaintiff after the accident as they had done before the accident. Plaintiff and her husband both testified that on some days plaintiff lay on the couch all day because of the pain. Brungart worked *1342 offshore, seven days on, seven days off, so plaintiff had sole responsibility for caring for Joshua and his younger sister while he was gone. Plaintiff felt she had neglected the children because of her injuries.
In light of this evidence and the physical injuries suffered by plaintiff, we find the jury was manifestly erroneous in its factual finding that Brungart and Joshua had not suffered a loss of consortium. Thus, we must reverse the trial court judgment dismissing their claims. After a de novo review of the record, we find the sum of $3,000.00 will adequately compensate Brungart for his loss of consortium, and the sum of $2,500.00 will adequately compensate Joshua. These sums, however, must be reduced by the percentage of negligence attributed to plaintiff. Daigle v. Legendre, 619 So.2d 836, 842 (La. App. 1st Cir.), writ denied, 625 So.2d 1040 (La.1993).

V. CONCLUSION
For the foregoing reasons, the judgment of the trial court of July 12, 1994, granting judgment notwithstanding the verdict is reversed, and the amended judgment of January 24, 1994, is reinstated as to Machelle Brungart. The judgments of the trial court dismissing the claims of Rodney C. Brungart individually and as administrator of Joshua Brungart are reversed. Judgment is hereby rendered in favor of Rodney Brungart, individually, and against Kmart Corporation in the sum of $600.00 ($3,000.00 less 80%). Judgment is hereby rendered in favor of Rodney Brungart as the administrator of Joshua Brungart in the sum of $500.00 ($2,500.00 less 80%). Costs of this appeal are to be divided equally between plaintiffs and defendant.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
KUHN, J., dissents and assigns reasons.
KUHN, Judge, dissenting.
The jury concluded plaintiff's accident was caused by the negligence of Kmart and the contributory negligence of Machelle Brungart. The jury obviously concluded Kmart breached its duty of keeping the premises safe from unreasonable risks of harm by displaying the oriental rugs in an unsafe manner. The jury must have also concluded Machelle breached her duty of exercising reasonable care for her own safety by failing to recognize the rugs were not securely positioned as she approached them and/or by moving the rugs so that they became unsteady on the shelving before they fell.
The issue of whether Machelle was contributorily negligent could only revolve around her testimony. She testified the only rugs she touched were on the lower shelf. Even a cursory reading of the testimony makes clear that the "dripping rugs" referred to were rugs on the lower shelf. These were the rugs Machelle was looking at just prior to the accident happening.
Mr. Bobby Templet, defendant's loss prevention manager, testified that there were no brackets on the long side of the open shelf to keep the carpets from falling off. He did testify the shelves were locked into place when he inspected them.
Factually the testimony is clear that smaller rugs on the bottom shelves were in disarray. There is absolutely no evidence suggesting the rugs on the top shelf were in disarray. Customers are entitled to assume that shelved merchandise will not roll off and strike them. Retif v. Doe, 93-1104 (La.App. 4th Cir. 2/11/94), 632 So.2d 405, 408, writ denied, 94-1000 (La. 6/17/94), 638 So.2d 1095.
The law pertaining to JNOV requires the trial court should not evaluate the credibility of witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Having awarded medical expenses and general damages to Machelle, the jury apparently believed she was injured. However, it must be recognized the jury may not have entirely believed Machelle's testimony regarding the events that transpired in Kmart.
Nevertheless, even if the jury believed Machelle noticed rugs hanging over the sides *1343 of the upper shelving as she approached the merchandise and that she moved some of the rugs on the upper shelving as she viewed the merchandise, despite her testimony to the contrary, a JNOV was warranted in response to the jury's apportionment of fault. Apportioning 80% of the fault to plaintiff was clearly erroneous. The evidence points so strongly and overwhelmingly in favor of finding plaintiff was not 80% at fault in causing the accident that reasonable men could not arrive at a contrary verdict. Reasonable people could not reach a conclusion other than that Kmart was more at fault than plaintiff in causing the accident. Kmart had large rugs displayed on shelving that did not have an adequate guard or barrier on the front of the shelf sufficient to prevent the rugs from falling. Because the jury allocated more fault to Machelle than to Kmart, the trial court properly granted the JNOV. Once the trial court concluded the JNOV was warranted, it is appropriate and necessary for the court to determine the proper allocation of fault to be assigned to the parties. Pino v. Gauthier, 633 So.2d 638, 653 (La.App. 1st Cir.), writs denied, 634 So.2d 858, 859 (La.1993).
After determining the trial court correctly applied its standard of review as to the jury verdict, this court would be required to review the JNOV using the manifest error standard of review. Daigle v. United States Fidelity and Guaranty Insurance Co., 94-0304, p. 6 (La.App. 1st Cir. 5/5/95), 655 So.2d 431, 436. Based on the evidence, the trial court's determination that Kmart is 100% at fault was manifestly erroneous.
La.C.C. art. 2323 provides that a plaintiff whose negligence contributes to their own injuries for which they seek damages shall have their claim reduced in proportion to their degree of fault. Under certain circumstances a store patron can be found to be negligent in contributing to their own accident and injuries; for instance, where the shopper actually sees a potentially dangerous condition and fails to take reasonable precautions to avoid the danger or when the circumstances are such that the patron failed to see a hazard which he reasonably should have seen and that by his failure he negligently caused his own injuries. Doming v. K-Mart Corp., 540 So.2d 400, 404 (La.App. 1st Cir.1989).
As the merchant with control over the premises, Kmart was in a superior position with respect to controlling the condition of the rug display. The evidence reveals the shelving was inadequate for the safe display of large rugs. Kmart should have been aware customers would need to move these rugs in order to view the merchandise and the rugs might be placed back on the shelves by customers in an unsafe manner. Kmart could have displayed the rugs in a safer manner. For example, the large rugs could have been hanging up or placed on lower shelving. With respect to plaintiff's conduct, when she noticed the rugs were hanging over the shelving, she should have proceeded with greater caution in viewing the rugs and should have requested assistance. Based on these considerations, fault to Machelle Brungart and to Kmart should have been reapportioned by this court.
NOTES
[1] The original judgment, which was signed on December 3, 1993, was silent as to court costs. An amended judgment was signed January 24, 1994, which taxed costs to defendant.
[2] Chatham stated he took photographs of the scene, but the photographs taken on the first visit were never properly introduced into evidence and did not form part of the record on appeal. Chatham testified he lost the photographs taken on the second visit.