pGOTHARD, Judge.
Plaintiff, Jerlean Castille, filed suit against Wal-Mart Stores, Inc. (Wal-mart) for injuries sustained when her arm became entangled in an exit door. After a trial on the merits, the court rendered judgment in favor of plaintiff in the total amount of $28,456.90. Wal-Mart appeals. For reasons that follow, we affirm.
At trial, Ms. Castille testified that in July, 1996 she was shopping at the Wal-Mart store in Harvey, Louisiana with relatives from out of town. Ms. Castille stated that she is quite familiar with the store, having shopped there often. Ms. Castille completed her shopping and went to the front exit of the store to wait for the other members of her party. In that area there are two benches which were occupied by other customers. Ms. Castille stood in the vestibule area for a while, waiting for her relatives to complete their shopping. When a seat on | ¡¡one of the benches next to the exit door became available, Ms. Castille sat down. As she sat, the automatic door behind her opened and closed many times as customers exited the store. Ms. Castille sat on the bench for about ten minutes looking back into the store to try to locate her party. Ms. Castille saw her relatives still shopping in the store and asked the store employee who was stationed at the exit door to tell them she was waiting at the door. After Ms. Castille saw her relatives, she relaxed, sat back on the bench, and put her left arm on the back of the bench. The automatic door opened and jammed her elbow in the mechanism. At first, Ms. Castille was unable to free her arm from the door. She had to move a small trash can nearby and pull her left arm free with her right hand. Ms. Castille testified that while her arm was stuck, the door was unable to open or close.
*906 Immediately after freeing her arm, Ms. Castille informed a store employee of the accident. The employee left and returned shortly with a manager who wrote a report on the incident. Ms. Castille was given an ice pack for her arm. Shortly afterward, the rest of Ms. Castille’s party came on the scene and they left the store.
Ms. Castille stated that she was able to drive the short distance to her home because she used her right hand. However, the injured arm continued to hurt. When she arrived home, the injured area was swelling. She took Tylenol, and continued to apply ice to the area. The pain continued and the next day, Ms. Castille soaked her arm in Epsom salts to get some relief. Because the pain did not ease, Ms. Castille sought medical treatment. Because her family doctor, Dr. Kroll, was on vacation, Ms. Castille went to another doctor in the group. He | ¿advised her to continue the treatment she had been doing. When Dr. Kroll returned Ms. Castille again sought treatment. The advice was the same.
When Ms. Castille’s arm did not heal, Dr. Kroll referred her to Dr. Borresen, who is a neurologist. Dr. Borresen conducted diagnostic tests and discovered that Ms. Castille had a pinched nerve in the left elbow. When Dr. Kroll reviewed the results of the tests, she referred Ms. Castille to Dr. Mark Juneau, an orthopedist. Because of a personality conflict between Ms. Castille and Dr. Juneau, Dr. Kroll referred Ms. Castille to a second orthopedist, Dr. DeGrado. Dr. DeGrado was unable to help Ms. Castille so she sought treatment with Dr. Puente, who conducted a second EMG. Dr. Puente diagnosed a pinched nerve in the elbow and recommended surgery. On Dr. Puente’s recommendation, Ms. Castille consulted a surgeon, Dr. Steck. Dr. Steck examined Ms. Castille and determined that surgery may not cure the pinched nerve. Further, because Ms. Castille has several other health concerns such as diabetes, high blood pressure, and a regimen of medication including a blood thinner, surgery was not advisable. Because of these considerations, Dr. Steck recommended physical therapy. After consultation with Dr. Kroll, it was decided that Ms. Castille would seek rehabilitation treatment, which did provide some relief.
At trial, Ms. Castille testified that her arm is beginning to feel better; although, she still has numbness and tingling sensation in the fingers of her left hand in the morning.
Ms. Castille testified that she still has problems with her arm. She is unable to lift heavy things. She cannot carry her purse on the left side and has difficulty wearing her watch on her left wrist. Further, she is unable to cook and |ficlean house as she did before the accident. She also testified that she can no longer enjoy her hobbies of gardening and fishing.
On cross-examination, Ms. Castille testified that she had other health problems during the year after the accident at Wal-Mart. She experienced foot pain, as well as chest and back pain. In May, 1997 she made an application for disability in which she stated that she was unable to stand, sit, bend or walk for a prolonged period of time. Further, she had pain in her legs, arms, feet, chest, and back. She also stated that she became dizzy with blurred vision and shortness of breath. She also admitted that she has been diagnosed with diabetes and peripheral vascular disease, which causes clotting and high blood pressure.
Dr. Michael Puente, a neurologist who treated plaintiff, testified that Ms. Castille came to him complaining of pain in the fourth and fifth digits of the left hand, the entire left arm on occasion, most severe in the area of the shoulder. She told Dr. Puente that she had injections for relief of carpal tunnel syndrome, which relieved the pain in her wrist.
Dr. Puente reviewed her tests and medical records and concluded that the plaintiff had an ulnar nerve entrapment. The doctor explained that the ulnar nerve begins as the nerve roots exit the cervical spine, *907 crosses through the shoulder area into the arm and continues down into the hand. It provides some sensory function, mostly for the side of the hand, the fourth and fifth digits of the hand, and goes up along the underside of the arm to around the elbow. The nerve provides motor function for some of the hand, such as grasping and moving the fingers, as well as the downward motion of the wrist.
Dr. Puente testified that he was aware of Ms. Castille’s medical problems and explained that diabetes can cause dysfunction of the nerves. In some cases |fione can develop a poly-neuropathy or peripheral neuropathy, which is diffuse dysfunction of the nerves on a metabolic basis. Such patients may be predisposed to entrap-ments at certain areas, such as carpal tunnel syndrome, or the ulnar nerve.
Dr. Puente opined that Ms. Castille is a possible candidate for surgery. The procedure would be to make a ten centimeter incision at the elbow, just over the nerve at the crest of the elbow, and then lift off the nerve around the bone so that it takes the pressure off of the nerve and releases any ligaments that are entrapping the nerve. Such surgery would cost several thousand dollars.
Dr. Puente was questioned in cross-examination about the effect of an automobile accident in which the plaintiff was involved in January, 1997. He stated that he based his opinion of causation on the fact that the results of the EMG taken before an automobile accident and after remained unchanged. Thus, he did not find any causal relationship between the intervening automobile accident and the nerve injury.
Dr. Puente testified that he found the entrapment was directly related to the trauma of the accident at Wal-Mart. He explained that he did not believe the entrapment was caused by the plaintiffs prir or medical condition because the EMG studies performed on the plaintiff demonstrated a very focal dysfunction only at the spot where she had her trauma and nowhere else. If diabetes w;ere the causation,- the pattern would be more diffuse.
Dr. Puente opined that the pain in the left shoulder was likely due to an arthritic problem or musculoskeletal problem. He suggested she seek treatment for that condition from an orthopedist.
17Araka Castille, plaintiffs daughter, testified concerning the plaintiffs change in lifestyle since the accident. She stated that her mother is unable to do the cooking and household chores as she did before.
After hearing all of the testimony, the trial court ruled in favor of the plaintiff. The judgment of the court is accompanied by reasons which indicate that the court found a causal link between the accident at Wal-Mart and the entrapment of the ulnar nerve. The court found Wal-Mart liable for the injury under LSA-C.C. article 2315 because the placement of the bench in such close proximity to the automatic door created an unreasonable risk of harm. The court also assigned plaintiff 15% liability under comparative negligence.
In brief to this court, Wal-Mart raises issues of liability and causation. Specifically, Wal-Mart contends the court erred in finding that it is liable for the injury. Alternatively, it argues that the plaintiffs comparative fault should be increased. Further, Wal-Mart refutes the trial court’s finding of a causal link between the accident and the injury.
Under general tort -principles, a party is liable for conduct which falls below the standard established by law for the protection of others against an unreasonable risk of harm. Dobson v. Louisiana Power & Light Co., 567 So.2d 569, 574 (La.1990). The proper analysis for the determination of negligence and liability is the duty-risk analysis. Under that analysis, the plaintiff must establish that:
(1) The conduct of which plaintiff complains was a cause in fact of the harm;
*908 (2) The defendant owed a duty to the plaintiff;
(3) The duty owed was breached; and |s(4) The risk of harm caused was within the scope of the breached duty.
Socorro v. City of New Orleans, 579 So.2d 931, 938-939 (La.1991).
LSA-R.S. 9:2800.6A summarizes the duty of a merchant under general negligence law, and provides that “(a) merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.” Thus, a merchant is required to exercise reasonable care to protect those who enter the store and to keep the premises safe from unreasonable risks of harm. Further, a merchant must warn persons of known dangers. Brungart v. K Mart Corp., 95-0708 (La.App. 1 Cir. 2/23/96), 668 So.2d 1335.
In a negligence action a plaintiff has the burden of proving negligence and causation by a preponderance of the evidence. Cay v. State, Dept. of Transpotation and Development, 93-0887 (La.1/14/94), 631 So.2d 393. A preponderance of evidence is evidence of greater weight or evidence which is more convincing than that offered in opposition to it. Thus, the existence of negligence is a factual finding which cannot be reversed unless it is shown to be manifestly erroneous or clearly wrong. Smith v. Jack Dyer & Associates, Inc., 633 So.2d 694 (La.App. 1 Cir.1993); Locke v. Sheriff, Parish of Jefferson, 94-652, 94-653 (LaApp. 5 Cir. 12/28/94), 694 So.2d 257, 259, writ denied, 95-268 (La.3/24/95), 651 So.2d 293.
Additionally, the plaintiff has the burden of proving by a preponderance of the evidence that the injury was caused by the accident. Roig v. Travelers Ins. Co., 96-164 (La.App. 5 Cir 12/11/96), 694 So.2d 362, writ denied, 97-721 (La.5/1/97), 693 So.2d 739.
| Jn the instant case, the trial court found the plaintiff to be a most credible witness. She testified to the details of the accident and the injuries she sustained as a result of the accident. It is clear from plaintiffs undisputed testimony that she sat down on a bench placed by the defendant for the use of its customers. Plaintiff testified that the placement of the bench in such close proximity to the automatic exit door was a hazard. She casually rested her arm on the back of the bench and it became entangled in the door when it opened. Defendant offered no testimony or evidence to contradict plaintiffs version of the facts. Accordingly, we cannot find that the trial court was manifestly erroneous or clearly wrong in the finding that the placement of the bench created a hazardous condition which imposed liability on Wal-Mart for plaintiffs injuries.
Further, her treating physician testified that he was certain the cause of the injury to plaintiffs arm was caused by the accident. His opinion was supported by a reasonable medical explanation. Again, the defendant offered no evidence to contradict any of the plaintiffs evidence. The reasons for judgment show that the trial court carefully evaluated all of the medical evidence and only found a causal connection between the accident and the entrapment of the ulnar nerve. Therefore, we cannot say the trial court was manifestly erroneous or clearly wrong in the factual findings regarding the causal connection between the accident and the injury to plaintiffs arm.
Defendant argues, in the alternative that the trial court erred in assessing only 15% comparative fault to plaintiff. A plaintiff can be found to be comparatively negligent when her conduct falls below the standard to which she should conform for her own protection. Ward v. Vizzini, 94-638 (La.App. 5 Cir. 5/14/97), 695 So.2d 1012, writ denied, 97-2142 (La.11/14/97), *909 703 So.2d 632. A shopper has the duty of exercising reasonable care for her own safety and for the safety of those under her care and control. Retif v. Doe, 93-1104 (La.App. 4 Cir. 2/11/94), 632 So.2d 405, 408, urrit denied, 94-1000 (La.6/17/94), 638 So.2d 1095; Brungart v. K Mart Corp., supra, 668 So.2d at 1339. A shopper who sees a potentially dangerous condition and fails to take reasonable precautions to avoid the danger may be found to have contributed to her injuries. Doming v. K-Mart Corp., 540 So.2d 400, 404 (La. App. 1 Cir.1989); Brungart v. K Mart Corp., supra, 668 So.2d at 1339. An assessment of comparative negligence by the trial court is subject to the manifest error rule on review. Ward v. Vizzini, supra. Given the facts of this case, we do not find manifest error.
For the foregoing reasons, we affirm the trial court and assign all costs of this appeal to defendant.
AFFIRMED.