EVA SARHAN AND FARES SARHAN, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILD, JOHN SARHAN
v.
FLORISTS MUTUAL INSURANCE COMPANY, WARDELL STEWART, AND PROGRESSIVE INSURANCE COMPANY
No. 2008 CA 0840.
Court of Appeals of Louisiana, First Circuit.
May 13, 2009.
Not Designated for Publication.
SEAN D. FAGAN, LOCKE MEREDITH, Counsel for Plaintiffs/Appellants Evan Sarhan and Fares Sarhan, Individually and on behalf of their minor child, John Sarhan.
ERIN REED, JAMES T. GUGLIELMO, Counsel for Defendants/Appellees/ 2nd Appellants, Wardell Stewart and Florists Mutual Insurance.
Before: KUHN, GUIDRY, GAIDRY, McCLENDON, and HUGHES, JJ.
GUIDRY, J.
In this personal injury action, plaintiffs, Eva Sarhan and Fares Sarhan, and John Sarhan, appeal from the trial court's judgment awarding only $15,000.00 for Eva Sarhan's general damages and failing to award any loss of consortium damages to Fares Sarhan and John Sarhan.[1] For the reasons that follow, we reverse in part, amend in part, and affirm in part as amended.

FACTS AND PROCEDURAL HISTORY
On December 3, 2003, Eva Sarhan was a guest passenger in a vehicle driven by Tomislav Stojak. While traveling east on the Airline Highway service road in Baton Rouge, a Mack truck driven by Wardell Stewart backed into the vehicle operated by Stojak.
Thereafter, on September 21, 2004, Eva Sarhan, her husband, Fares Sarhan, and their son, John Sarhan, filed a petition for damages, naming Wardell Stewart and his insurer Florists Mutual Insurance Company (Florists Mutual) as defendants,[2] and seeking damages for Eva Sarhan's injuries, as well as damages for Fares' and John's losses of consortium. A jury trial commenced on October 1, 2007. After hearing the evidence and being charged with the law, the jury found Stewart and Florists Mutual liable to Eva Sarhan for damages in the total amount of $119,760.04. Thereafter, the trial court signed a judgment in conformity with the jury's verdict, finding Stewart and Florists Mutual liable in solido for the injuries to Eva Sarhan in the total amount of $119,760.04, plus legal interest. Additionally, the judgment stated the court did not find that Fares and John Sarhan had suffered loss of consortium and therefore, did not award any damages for their loss of consortium claims.
Eva Sarhan, Fares Sarhan, and John Sarhan, now appeal from this judgment and assert that the trial court abused its discretion by assigning an inadequate value for Eva's general damages and also erred in failing to find that Fares and John were entitled to recover damages for loss of consortium.
Stewart and Florists Mutual answered the appeal, and assert that the trial court erred in finding them liable for Eva Sarhan's injuries, that the trial court abused its discretion in failing to properly compare fault, and that the jury's damage award was excessive.

DISCUSSION

Liability
Stewart and Florists Mutual assert on appeal that the jury erred in finding that the accident in question caused Eva Sarhan's injuries. In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and the injuries complained of. American Motorist Insurance. Co. v. American Rent-All, Inc., 579 So. 2d 429, 433 (La. 1991). The trial court's finding regarding causation is a factual finding and must be reviewed under the manifest error standard. Robling v. Allstate Insurance Co., 97-0582, p. 4 (La. App. 1st Cir. 4/8/98), 711 So. 2d 780, 783.
Under the manifest error standard, a reviewing court may not set aside a jury's finding of fact in the absence of manifest error or unless it is clearly wrong, and where there is conflict in the testimony, inferences of fact should not be disturbed upon review, even though the reviewing court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So. 2d 840, 844 (La. 1989). If the jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell, 549 So. 2d at 844. When there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell, 549 So. 2d at 844.
Further, when findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, 549 So. 2d at 844. The rule that questions of credibility are for the trier of fact also applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Hanks v. Entergy Corporation, 06-477, pp. 23-24 (La. 12/18/06), 944 So. 2d 564, 580-581.
From our review of the record, we find that the jury was presented with two permissible views of the evidence. Wardell Stewart testified he was attempting to pull into the Mack truck dealership driveway, but when he realized he would not be able to make the turn, he decided to back up. He stated that prior to backing up the eighteen-wheeler, he looked in both of his rear view mirrors and did not see anything behind him. Accordingly, he proceeded to put the truck in reverse with his flashing lights on. Stewart stated that he only backed approximately three to five feet at a speed of maybe three to five miles per hour. He also stated that he did not hear a horn blow, and was not aware that he had hit anyone until Stojak approached his truck.
Stojak testified that when he stopped at the stop sign, he was approximately ten feet behind Stewart's truck. Eva Sarhan and Stojak testified that when the truck started to back up, they did not see any flashing lights. Stojak testified that he honked his horn and backed his car approximately four to five feet, but that he could not back any more than that because there was a vehicle behind him. Both Eva Sarhan and Stojak testified that when the truck struck the car, the car began to jump backwards. Eva Sarhan testified that she braced herself with her hands on the dashboard of the car and turned around to see if they were going to hit the vehicle behind them. When the truck did not stop, Stojak stated that he got out of his car and approached the cab of the truck to notify Stewart that he was hitting Stojak's car. At that point, Stewart stopped backing his truck.
Eva Sarhan admitted that the truck was not backing up at a high rate of speed, but asserted that because of the size of the truck, and the jumping movement it caused when it hit the car, the impact felt greater. She stated that she did not feel any pain on the date of the accident, but that she started to hurt a couple of days thereafter. She admitted that she did not seek treatment until January 26, 2004, but stated that she took Alleve, and used over-the-counter medications to cope with her pain because she was the sole provider for her family and had to continue to work. Eva Sarhan stated that she only went to the doctor in January 2004 because she could not take the pain any longer.
Ned Martello, a licensed chiropractor, testified on behalf of Eva Sarhan. Dr. Martello stated that he had previously treated Eva for lower back pain, headaches, and neck pain as a result of a 2001 automobile accident, which treatment ceased in April of 2002. According to Dr. Martello, he mainly treated her for the lower back pain, but did treat her neck pain, which showed signs of improvement at the conclusion of her treatment. Dr. Martello stated that he started treating Eva again on January 26, 2004, when she presented with complaints of neck pain, right shoulder pain, pain in her left lower leg, lower back pain, and headaches. Eva told him she had been in an automobile accident on December 2, 2003. Dr. Martello stated that there was a clinical difference between her neck complaints from before the December 2003 accident and after. Dr. Martello had a feeling that her cervical injury was worse than the 2001 injury, and subsequently learned from an MRI performed on March 7, 2005, that the disc bulge at the C-5, C-6 level that was 3mm in 2001 was now 7mm.
According to Dr. Martello, the cause of the change was most likely from trauma, given that the disc was in a weakened state from the previous injury and considering the information that Eva gave him about how the accident happened and her response during the accident by bracing herself and turning around. Dr. Martello further stated that if the change was from natural degenerative progression, he would have expected to see increased osteophytes or increased disc calcification in the area of the disc injury on the MRI, which he did not see. Accordingly, he was of the opinion that the December 2003 accident caused the disc problem in Eva's neck.
Dr. Martello stated that Eva stopped treating with him in April 2004, indicating that she believed her job was in jeopardy because she had missed so much work. Although Eva decided to discontinue treatment to save her job, she continued to use the Alleve, Aspercream and Icy Hot to deal with her pain until she returned to see him in November of 2004.
Dr. Jorge Isaza also testified by way of video deposition that he started treating Eva Sarhan on February 7, 2005. He, too, had previously treated Eva for her injuries as a result of the 2001 accident, where he recommended conservative treatment, physical therapy and muscle relaxers. Dr. Isaza last saw her for those injuries in July of 2002. When Eva returned in February of 2005, she gave a verbal history, indicating that she had had intermittent neck pain over the past few years since her last visit, but that since her accident in December 2003, she had had severe, significant pain, which did not resolve with medication and treatment with Dr. Martello. Dr. Isaza stated that he reviewed the two MRI films, and because of Eva's intractable pain, recommended a cervical fusion. Dr. Isaza performed the cervical fusion on March 31, 2006.
Dr. Randall Lea, who performed an independent medical examination of Eva Sarhan on August 31, 2005, testified that in his opinion, Eva did suffer from some cervical pain as a result of the accident, but that her pre-existing degenerative condition and age were more likely the cause of her cervical surgery than was the accident.
Clearly, the jury was presented with conflicting lay and expert witness testimony on the issue of causation. Stewart and Florists Mutual assert that the jury erred in crediting Eva Sarhan's testimony because her trial testimony conflicted with testimony given in her deposition, particularly with regard to her previous injuries and lawsuits. However, from our review of the record, we find that the jury could have determined that based on Eva's limited proficiency of the English language, that she was merely having communication problems rather than deliberately trying to deceive the court. Because the jury is in the best position to evaluate the witness's demeanor, we cannot say that the jury erred in finding Eva Sarhan to be a credible witness. Therefore, from our review of the record, we do not find that the jury was manifestly erroneous or clearly wrong in choosing to credit the testimony of the plaintiff and her witnesses over that of the defendants.

Comparative Fault
Stewart and Florists Mutual also argue that the jury erred in failing to properly compare the fault of the parties. Allocation of fault is a factual matter within the sound discretion of the trier of fact and will not be disturbed on appeal in the absence of manifest error. Adams v. Parish of East Baton Rouge, 00-0424, p. 23 (La. App. 1st Cir. 11/14/01), 804 So. 2d 679, 698, writ denied, 02-0448 (La. 4/19/02), 813 So. 2d 1090. In Watson v. State Farm Fire and Casualty Insurance Co., 469 So. 2d 967, 974 (La. 1985), the supreme court articulated the factors appropriate for consideration in allocating fault between two or more parties:
In determining the percentages of fault, the trier of fault shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And of course, as evidenced by concepts such as last clear chance, the relationship between fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
In the instant case, the jury assigned Stewart one hundred percent of the fault for causing the accident. From our review of the record, we do not find that the jury was manifestly erroneous. The evidence indicated that Stewart could have driven around and come straight into the Mack truck dealership driveway, but for convenience decided to back up on the service road. Stojak stated that he was approximately ten feet behind the truck when it started to back up and attempted to warn Stewart that he was behind him by blowing his horn. Stojak also tried to avoid an accident by trying to back his vehicle. When the other measures failed, Stojak even got out of his vehicle to notify Stewart that he was hitting Stojak's vehicle.
Further, though an unidentified woman was in the vehicle immediately behind Stojak's and prevented him from backing any more, we do not find from our review of the record that the jury was manifestly erroneous in failing to allocate any fault for the accident to the unidentified driver or to Stojak. Accordingly, we find no error in the jury's decision to assign one hundred percent of the fault to Stewart.[3]

General Damages
General damages involve mental or physical pain and suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle that cannot be measured definitively in terms of money. Pena v. Delchamps, Inc., 06-0364, p. 1 (La. App. 1st Cir. 3/28/07), 960 So. 2d 988, 994, writ denied, 07-0875 (La. 6/22/07), 959 So. 2d 498. The primary objective of general damages is to restore the party in as near a fashion as possible to the state he was in at the time immediately preceding the accident. Pena, 06-0364 at p. 11, 960 So. 2d at 994.
The trier of fact is accorded much discretion in fixing general damage awards. La. C.C. art. 2324.1; Cheramie v. Horst, 93-1168, p. 6 (La. App. 1st Cir. 5/20/94), 637 So. 2d 720, 723. The discretion vested in the trier of fact is great, even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So. 2d 1257 (La. 1993), cert. denied, 510 U.S. 1114, 114 S. Ct. 1059, 127 L. Ed. 2d 379 (1994).
The role of an appellate court in reviewing a general damage award is not to decide what it considers to be an appropriate award, but rather, to review the exercise of discretion by the trier of fact. Bouquet v. Wal-Mart Stores, Inc., 08-0309, p. 5 (La. 4/4/08), 979 So. 2d 456, 459. Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the jury abused its discretion. In order to make this determination, the reviewing court first looks to the individual circumstances of the injured plaintiff. Theriot v. Allstate Insurance Co., 625 So. 2d 1337, 1340 (La. 1993). It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award. Youn, 623 So. 2d at 1261. Only after a determination that the trier of fact abused its much discretion is a resort to prior awards appropriate, and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Kaiser v. Hardin, 06-2092, pp. 9-10 (La. 4/11/07), 953 So. 2d 802, 809.
Pain and suffering, both physical and mental, refers to the pain, discomfort, inconvenience, anguish, and emotional trauma that accompanies an injury. McGee v. A C And S, Inc., 05-1036, p. 5 (La. 7/10/06), 933 So. 2d 770, 775. The factors to be considered in assessing quantum of damages for pain and suffering are severity and duration. Thibodaux v. USAA Casualty Insurance Co., 93-2238, p. 8 (La. App. 1st Cir. 11/10/94), 647 So. 2d 351, 357. Conversely, loss of enjoyment of life refers to detrimental alterations of the person's life or lifestyle or the person's inability to participate in the activities or pleasures of life that were formerly enjoyed prior to the injury. Whether or not a plaintiff experiences a detrimental lifestyle change depends on both the nature and severity of the injury and the lifestyle of the plaintiff prior to the injury. McGee, 05-1036 at p. 5, 933 So. 2d at 775.
In the instant case, the jury awarded Eva Sarhan $12,000.00 for physical pain and suffering, $1,500.00 for mental pain and suffering, $1,500.00 for physical disability, and $0 for loss of enjoyment of life. From our review of the record, we find the jury's awards for physical pain and suffering, mental pain and suffering and physical disability constitute an abuse of the jury's discretion.
Eva Sarhan presented medical testimony that though she had suffered intermittently from cervical pain prior to the December 2003 accident, after the accident she suffered from substantial cervical pain, which did not subside with physical therapy and muscle relaxers and ultimately resulted in her having a cervical discectomy and fusion in March of 2006. Eva testified that she was terrified of having the cervical fusion and did not want to miss the time from work since she was the sole provider for the family, but that she finally agreed to the fusion because her pain was intolerable. After the surgery, Eva had to wear a collar and was afraid to move or do anything for three months because she did not want to reinjure her neck. Eva also testified at trial that though her pain had improved since the surgery, she still suffered from residual pain as of the date at trial. Eva also testified that before the accident, she enjoyed a close relationship with her husband and son, but that as a result of the accident, she was not happy anymore and either did not talk to them or argued with them. Eva also testified that as a result of the financial strain the accident put on her, she had to borrow money from family members, and that they would no longer speak to her. Eva stated that she was always worried about money now and did not want to be at home anymore because that is all she thought about.
Additionally, Dr. Isaza testified that though he released Eva to return to work in November of 2006, she was restricted to light duty, and was not to lift anything over ten pounds or to engage in any overhead activity.
Based on the evidence in the record, we find that the jury abused its discretion in awarding $12,000.00 for Eva Sarhan's physical pain and suffering, $1,500.00 for her mental pain and suffering, and $1,500.00 for her physical disability. The jury clearly found that the cervical fusion was necessitated by the injury sustained in the December 2003 accident, as is evidenced by the inclusion of expenses associated with that surgery in the amount awarded for past medical expenses. Further, a defendant takes a plaintiff as he finds him and is responsible for all natural and probable consequences of his tortious conduct. When the defendant's negligence aggravates a pre-existing injury or condition, he must compensate the victim for the full extent of the aggravation. Pena, 06-0364 at p. 10, 960 So. 2d at 994. As such, considering the evidence, the minimum amount that was within the jury's discretion to award was $75,000.00 for physical pain and suffering, $25,000.00 for mental pain and suffering, and $25,000.00 for physical disability, for a total general damage award of $125,000.00. See Rochel v. Terrebonne Parish School Board, 93-0383 (La. App. 1 Cir. 5/20/94), 637 So. 2d 753, writ denied, 94-1613 (La. 10/7/94), 644 So. 2d 633 (general damage award of $125,000.00 for physical and mental pain upheld for plaintiff who had pre-existing degenerative condition which was aggravated by the accident to the point that surgery was required to alleviate the condition and resulted in ten percent anatomical impairment); Andrus v. State Farm Mutual Automobile Insurance Co., 95-0801 (La. 3/22/96), 670 So. 2d 1206 (general damage award of $75,000.00 for physical pain and suffering for plaintiff with pre-existing by non-symptomatic spondylosis who following accident had to have cervical surgery and had resulting physical limitations); Prestenback v. Schwegmann Giant Supermarkets, Inc., 96-793 (La. App. 5th Cir. 1/28/97), 688 So. 2d 149, writ denied, 97-0977 (La. 5/30/97), 694 So. 2d 249 (general damage award of $125,000.00 for plaintiff with pre-existing degenerative disc disease that was aggravated by accident necessitating cervical disc fusion and resulting physical impairment); Whitaker v. Mullinax, 628 So. 2d 222 (La App. 2nd Cir. 1993), writ denied, 94-0382 (La. 3/25/94), 635 So. 2d 241 (general damage award of $100,000.00 for physical pain and suffering and mental anguish for plaintiff with pre-existing degenerative disc disease aggravated by accident necessitating cervical fusion).
However, based on the evidence presented, we do not find that the jury erred in determining that Eva Sarhan did not establish a detrimental change in lifestyle so as to warrant an award of damages for loss of enjoyment of life.

Special Damages
Special damages are those which have a ready market value, such that the amount of the damages theoretically may be determined with relative certainty, including medical expenses and lost wages. Kaiser, 06-2092 at p. 11, 953 So. 2d at 810. A jury's factual determinations with regard to special damages are reviewed under the manifest error standard. Kaiser, 06-2092 at pp. 11-12, 953 So. 2d at 810.
A plaintiff may ordinarily recover reasonable medical expenses, past and future, which he incurs as a result of an injury. White v. Longanecker, 93-1122, p. 9 (La. App. 1st Cir. 5/23/94), 637 So. 2d 1213, 1218, writ denied, 94-1704 (La. 10/7/94), 644 So. 2d 640. When a plaintiff alleges that he incurred medical expenses and that allegation is supported by a bill, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support inclusion of that item in the judgment. White, 93-1122 at p. 9, 637 So. 2d at 1218.
In the instant case, Eva Sarhan presented copies of her bills for her medical treatment received after the December 2003 accident. Stewart and Florists Mutual do not dispute the amount of the medical expenses, but rather, dispute that the accident caused Eva's injuries. As stated above, Dr. Martello testified that in his opinion, the December 2003 accident caused the pre-existing disc herniation to become larger and resulted in Eva needing surgery to relieve her pain. Additionally, Dr. Martello acknowledged that Eva had a pre-existing disc herniation at the C-5, C-6 level at the time of the accident. However, he stated that no doctor had recommended cervical surgery prior to the December 2003 accident, and that when Eva discontinued treating with him in April of 2002, her neck pain had improved. Further, Dr. Martello did not see any indication on the 2005 MRI that the cervical changes were from natural degenerative progression. Therefore, from our review of the record, we find that Eva established that the December 2003 accident resulted in her injuries, including the need for the cervical fusion, and therefore, we find this argument to be without merit.
However, Stewart and Florists Mutual also assert that Eva presented no evidence as to her need for future medical care and therefore, the jury erred in awarding her $10,000.00 for future medical expenses. An award for future medical expenses is justified if there is medical testimony that they are indicated and setting out their probable cost. In such a case, the court should award all future medical expenses that the medical evidence establishes that the plaintiff, more likely than not, will be required to incur. Hymel v. HMO of Louisiana, Inc., 06-0042, p. 26 (La. App. 1st Cir. 11/15/06), 951 So. 2d 187, 206, writ denied, 06-2938 (La. 2/16/07), 949 So. 2d 425.
At trial, Eva presented the video deposition of Dr. Isaza, who stated that from fusing the spine, she could develop some degenerative changes on the levels immediately above and below, which could necessitate physical therapy and medication for inflammation and pain. Additionally, Dr. Isaza stated that there is a fifteen percent chance that she will need another surgery, but that more probable than not she will not need another surgery. This evidence does not establish that more probable than not Eva will require future medical care and certainly does not establish any probable cost. Accordingly, the jury erred in awarding Eva $10,000.00 for future medical expenses.
Finally, we address Eva's award for past lost wages. To recover for actual wage loss, a plaintiff must prove that he would have been earning wages but for the accident in question. Boyette v. United Services Automobile Assoc., 00-1918, p. 3 (La. 4/3/01), 783 So. 2d 1276, 1279. In other words, it is the plaintiffs burden to prove past lost earnings and the length of time missed from work due to the accident. Boyette, 00-1918 at p. 3, 783 So. 2d at 1279. Past lost earnings are susceptible of mathematical calculation from proof offered at trial and require such proof as reasonably establishes the claim. This proof may consist of plaintiff's own testimony; however, to allow a plaintiff to recover damages for lost wages when there is no independent support of plaintiffs claim is highly speculative. Rhodes v. Louisiana, Department of Transportation and Development, 94-1758, p. 19 (La. App. 1st Cir. 12/20/96), 684 So. 2d 1134, 1147, writ not considered, 97-0242 (La. 2/7/97), 688 So. 2d 487.
Eva Sarhan presented copies of her income tax returns for the three years preceding the accident and the year after the accident, in addition to payroll records for 2004. Eva also submitted a wage loss verification for three weeks of work missed during 2004, showing a rate of pay of $10.00 per hour. Additionally, Eva testified that prior to the surgery, she worked forty hours a week as an assistant manager earning $11.00 per hour. However, she was out of work from her surgery on March 31, 2006 until she was released to return to work in November of 2006. Eva stated that she was unable to return to her managerial position at Las Palmas restaurant following her surgery and was unable to find employment elsewhere. Eva stated that Las Palmas finally agreed to give her some hours, which started at two hours per day and gradually increased to four or five hours a day by the date of trial, but she was only earning $10.00 per hour. Based on our review of the record, we find that the jury's award of $30,000.00 is supported by the evidence and as such, we find no error in that award.

Loss of Consortium
Fares Sarhan and John Sarhan also appeal the jury's failure to award them damages for their loss of consortium. Louisiana Civil Code article 2315(B) authorizes the recovery of loss of consortium, service, and society as damages by the spouse and children of an injured person. These elements of damages include such pecuniary elements as loss of material services and support and such nonpecuniary elements as loss of love, companionship, affection, aid and assistance, society, sexual relations, comfort, solace, and fidelity. Jenkins v. State, Department of Transportation and Development, 06-1804, pp. 44-45 (La. App. 1st Cir. 8/19/08), 993 So. 2d 749, 777. A loss of consortium award is a fact-specific determination, to be decided on a case-by-case basis, and is disturbed only if there is a showing of an abuse of discretion. Quinn v. Wal-Mart Stores, Inc., 34,280 (La. App. 2nd Cir. 12/6/00), 774 So. 2d 1093. Entitlement to loss of consortium damages is a question of fact which will not be reversed on appeal in the absence of manifest error. See Pena, 06-0364 at p. 14, 960 So. 2d at 996.
Fares and John Sarhan both testified at the trial. Fares stated that he had been married to Eva for twenty-eight years. Prior to the accident, he would sit with his wife and talk and they did everything together. After the accident, he said something in his wife broke; she does not smile anymore and sometimes when he talks to her, she does not even listen. Eva also stated that she and her husband did not have a sexual relationship after the accident. Fares stated that he did all of the housework, but acknowledged that he also did that prior to the accident so that Eva could work outside of the home because he was disabled.
John Sarhan testified that he was in the eighth or ninth grade at the time of his mother's accident. John stated that before the accident, he and his mom would always go places together, like out to eat or to the movies and that she would watch him play basketball and baseball. However, after the accident, he did not spend as much time with his mom because she was always mad and she did not care about those things anymore. Also, he stated that his grades in school had gone down but that his mom did not show an interest in that anymore.
Additionally, Eva testified that she was the sole wage earner in the family and that when she could not work because of her injuries from the accident, she had to borrow money from relatives, refinance their home, take out loans and lost all of their savings.
From our review of the record and considering the particular facts and circumstances of this case, we find that the jury erred in failing to award Fares and John damages for their loss of consortium. The uncontradicted evidence in the record establishes that Fares and John suffered loss of support, companionship, affection, aid and assistance, society, and comfort and that Fares suffered loss of sexual relations. Accordingly, we award Fares $5,000.00 and John $2,500.00 for their loss of consortium. See Frazer v. St. Tammany Parish School Bd., 99-2017 (La. App. 1st Cir. 12/22/00), 774 So.2d 1227, writ denied, 01-0233 (La. 3/23/01), 787 So.2d 1001; Brugnart v. K Mart Corp., 95-0708 (La. App. 1st Cir. 2/23/96), 668 So.2d 1335, writ denied, 96-0763 (La. 5/3/96), 672 So.2d 686; Bade v. Wade, 607 So.2d 927 (La. App. 2nd Cir. 1992); Whitaker v. Mullinax, 628 So. 2d 222 (La App. 2nd Cir. 1993), writ denied, 94-0382 (La. 3/25/94), 635 So. 2d 241.

CONCLUSION
For the foregoing reasons, we amend the trial court's judgment to reflect an increase in the damages for physical pain and suffering to $75,000.00, mental pain and suffering to $25,000.00, and physical disability to $25,000.00. We reverse that part of the trial court's judgment awarding $10,000.00 for future medical expenses. Likewise, we reverse that part of the trial court's judgment finding Fares and John Sarhan were not entitled to damages for their loss of consortium and order that Fares Sarhan be awarded damages in the amount of $5,000.00 and that John Sarhan be awarded damages in the amount of $2,500.00. In all other respects, the judgment of the trial court is affirmed. All costs of this appeal are to be borne equally by the parties.
REVERSED IN PART; AMENDED IN PART, AND AFFIRMED IN PART AS AMENDED.
McCLENDON, J., agrees in part and dissents in part and assigns reasons.
I believe that the award for lost wages in the amount of $30,000.00 is excessive and an abuse of discretion. Further, I do not believe the failure to award damages for lost of consortium should be reversed.
NOTES
[1] During the course of this litigation, John Sarhan achieved the age of majority and was substituted as party plaintiff.
[2] Tomislav Stojak's insurer, Progressive Insurance Company, was also named as a defendant; however, the plaintiffs voluntarily dismissed their claims against Progressive by judgment dated March 15, 2005.
[3] Stewart and Florists Mutual assert in brief on appeal that the jury erred in failing to assign a percentage of fault to Eva Sarhan. However, at the trial, the parties specifically agreed in charging the jury that Eva was not to be considered in the allocation of fault. Therefore, we find this argument to be without merit. Additionally, Stewart and Florists Mutual assert that Eva Sarhan failed to mitigate her damages by not seeking medical attention until fifty-five days following the accident. While this argument is probably more appropriately considered in the determination of damages, we find that regardless, the jurisprudence is settled that a plaintiff does not fail to mitigate her damages by enduring pain and postponing medical treatment when the delay is not unreasonable and did not aggravate the injury. McKnight v. McCastle, 04-2437, p. 9 (La. App. 1st Cir. 12/22/05), 928 So. 2d 45, 51, writ denied, 06-0205 (La. 4/24/06), 926 So. 2d 548. There is no evidence in the record suggesting that Eva Sarhan's delay in seeking medical treatment was unreasonable or that it aggravated her injuries. Accordingly, we likewise find this argument to be without merit.