IzGOTHARD, Judge.
Plaintiff, Gina Franovich, filed this action against K-Mart to recover damages sustained in a slip and fall on defendant’s premises.[1] After a bench trial on October 18 and 19, 1994, the trial court ruled in favor of the plaintiff awarding $19,535.91 in damages. Defendant appeals.
Plaintiff testified that, on the morning of April 22,1991 she took her grandfather, Robert Mistich, to the doctor at Meadowcrest Hospital, where he received treatment and a prescription for insulin. After leaving the hospital, Ms. Franovich stopped at the K-Mart in Gretna to have the prescription filled. Mr. Mistich remained in the car in the parking lot. As Ms. Franovich exited the | gcrowded store, she slipped on some ice cream dropped on the floor in the aisle between the concession stand and the cash registers. Ms. Franovich explained that she did not see the ice cream because there were many customers coming and going, pushing carts in the area.
Ms. Franovich stated that she stepped in the ice cream with her left foot. Her foot went up in the air and she landed on her “tail bone” and lower back. She testified that she sat there for a few moments. Then, one of the cashiers asked if she was all right but did not offer any assistance. Ms. Franovich said she got up and limped over to the deli where she wiped the ice cream from her pants and arm. While she was trying to compose herself, Ms. Franovich saw one of the store employees wiping up the ice cream with a roll of paper towels. Ms. Franovich returned to her car and went home with her grandfather.
During the sixty mile drive from the K-Mart to her home in Buras, Louisiana, the pain in her back became more intense and she was unable to sleep that night. The next morning a friend took Ms. Franovich to see Dr. Knox, and to make an accident report at K-Mart. After two visits with Dr. Knox, Ms. Franovich was referred to Dr. Mark Juneau who is associated with the Jefferson Orthopedic Clinic. Dr. Juneau made visits to Port Sulfur, making his treatment accessible to Ms. Franovich. She was diagnosed as having a sprained back and was treated by Dr. Juneau until July, 1991. Ms. Franovich stated that she did not go back to Dr. Juneau because he recommended an MRI, which was beyond Ms. Franovich’s financial means at the time, and because he stopped going to Port Sulfur, which made visits to him too inconvenient. Subsequently, Ms. Franovich was able to afford the MRI and other diagnostic tests and was treated Rby other doctors including Drs. Gregory Volek and Kenneth Vogel. Her medical bills as a result of the accident totalled $4,565.91.
Ms. Franovich, a 34 year-old mother of an 11 year-old daughter, further testified that since the accident she has been divorced. She attributes the divorce, in part, to her inability to engage in sexual activities due to the pain in her lower back. She also stated that she is unable to enjoy activities with her daughter, such as horseback riding and gardening. Further, she was forced to discontinue an aerobic workout program in which she faithfully engaged before the accident.
The plaintiff also presented testimony from Dr. Gregory Volek, a chiropractor who treated her. Dr. Volek testified that he first saw the plaintiff on February 27, 1992. His examination revealed that Ms. Franovich had *697 left sciatic notch tenderness and some decreased sensation endorsement of her right foot. She had midline tenderness from LI to L5, paraspinal tenderness from LI to L5 bilaterally, and spasm from L3 to L5 bilaterally. As a result of this examination, Dr. Volek opined that the plaintiff had a chronic sprain/strain injury. The patient underwent a CT Scan and an MRI which showed no damage to the disc. Dr. Volek stated that he believed the plaintiff had lumbar faseit ar-thropathy, a condition in which the joints, because of an injury, remain inflamed and irritated. Because Dr. Volek’s office is in Harvey and Ms. Franovich lives in Buras, transportation became a problem, and Ms. Franovich was unable to undergo the treatments on a regular basis. Dr. Volek opined that her condition would remain chronic for the foreseeable future.
Plaintiff also offered testimony from Darlene Dequeant, a close friend of the plaintiffs for about ten years. Ms. Dequeant testified that she and Ms. Franovich “worked out” every day for a year prior to the incident at K-Mart. |5Specifically, Ms. Dequeant stated that they rode bikes, walked, and worked on the Soloflex exercise equipment. She testified that Ms. Franovich enjoyed gardening and riding horses.
' Ms. Dequeant also testified that she went to Ms. Franovich’s home about two days after the accident. Ms. Franovich showed her the bruise on her hip and left side sustained in the accident. Ms. Dequeant stated that she moved in with Ms. Franovich after the breakup of the Franovich marriage, about five months after the accident, to take care of Ms. Franovich and her child because Ms. Franovich was unable to keep house or cook due to the injury to her back.
Both parties entered into a stipulation regarding Robert Mistich, plaintiffs grandfather. It was stipulated that if he were to testify at trial, he would say that when Ms. Franovich returned to the car after leaving the K-Mart she was limping. He also saw that her pants now had a wet spot in the upper leg/hip area, and she complained of lower back pain as they drove home.
Jeannine Louviere, who was employed as a cashier supervisor at the store when Ms. Franovich fell, testified that she was only about five or six feet from the plaintiff when she slipped. Ms. Louviere verified that the plaintiff did indeed slip on some ice cream, but denies that she fell. According to Ms. Louviere’s testimony, the plaintiff merely slipped, then caught her balance before she fell, and responded affirmatively when asked if she was alright. Then she left the store uninjured, and without filling out an incident report.
The witness also testified to the methods used by K-Mart to ensure that the aisles are kept free of hazards. She stated that the store does not have a specific floor inspector or clean up crew; instead, they rely on all employees to clean the floor or pick up dropped items whenever they happen to notice the need for such 16action. She said that the store has no regular safety meetings or training. The witness stated that one of her duties was to keep the area clean, which required her to clean up spilled food in that area about once a week. She also explained that she was the one who cleaned up the ice cream in which the plaintiff slipped. According to her testimony the ice cream spill was about one foot long, but only required one napkin to absorb.
She further contended that she walked in the area just before the incident and saw nothing on the floor. It was her testimony that the ice cream could not have been on the floor for more than five minutes. She also admitted that the area in which the plaintiff fell is a heavy traffic area, since those customers who purchase food items from the deli must pass that way to exit the store. She further stated that she was the supervisor of cashiers throughout the store and that her job involved making change for the cashiers and helping customers when necessary. However, she stated that she rarely left her post near the front registers.
The parties also stipulated that if Barbara Brignac, an employee of K-Mart were to testify, she would state that she simply took down the information provided to her by the plaintiff on the day after the accident, and that she was not working the day of the *698 accident and has no independent knowledge of the incident.
In the instant case it is clear that the plaintiff slipped in ice cream on the floor. There is sufficient evidence to show that the ice cream was sold at the snack bar in the store. The trial court gave extensive reasons for judgment in this case, finding the plaintiff’s version of the events, and her resulting injuries, to be credible. This Court can find no manifest error in that factual finding. ^Further, the trial court held that K-Mart was negligent in choosing to place the snack bar in a high traffic area near the front of the store, and opined that it is foreseeable that someone will buy ice cream and spill it on the floor. The trial court also found that K-Mart had constructive knowledge of the spill. Noting that under the statute, constructive notice means the condition existed for such a period of time that it would have been discovered if the merchant exercised reasonable care, the trial court held that the plaintiff met her burden of proof that the merchant failed to exercise reasonable care because the store’s policy of relying on every employee to notice spills amounts to no policy of cleanup. As the trial court succinctly stated: “to say that everybody’s responsible for cleanup is to say nobody is responsible”.

LAW

The liability, of a merchant for injuries sustained by a customer while on the premises of a merchant is governed by LSA-R.S. 9:2800.6, which reads since its amendment in 1990, as follows:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable; |s(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) “Constructive notice” means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
(2) “Merchant” means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322 or 2695.
As amended, the above statute requires that the plaintiff prove the hazardous condition which caused the fall presented an unreasonable risk of harm, the merchant either created or had actual or constructive notice of the condition which caused damage prior to the occurrence, and the merchant failed to exercise reasonable care. Saucier v. Kugler, Inc., 628 So.2d 1309 (La.App. 3 Cir.1993). Although the presumption of negligence on the part of the merchant no longer arises from a showing that floor debris caused a fall, reasonableness of the merchant is still at issue. See, Perez v. Wal-Mart Stores, Inc., 608 So.2d 1006 (La.1992). We find no error in the trial court’s ruling that K-Mart failed to use reasonable care. Consequently, we affirm the judgment in favor of the plaintiff. All costs of this appeal are assessed to the defendant/appellant.
AFFIRMED.

. The action was originally filed in State Court, and removed to Federal Court but was remanded to State Court on December 14, 1993 when plaintiff’s counsel stipulated that, based upon medical information, plaintiff's damages did not exceed the jurisdictional sum of $50,000.00.