bGOTHARD, Judge.
This litigation arose as a result of an accident, occurring on July 8, 1991, at about 4:30 p.m., on Highway 90 near Mile marker 253. After trial on the merits, the court rendered judgment in favor of plaintiffs and against defendant, State, through the Department of *1219 Transportation and Development (DOTD) as follows:.
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment be rendered in favor of the plaintiffs, Keith Price, Vicki Price, Alecia Price, De-tra Price Towns, Dedria Price Watson and Michelle Price, in the principal amount of $75,000.00 each for the wrongful death of their deceased father, Charles Archie Price; and $250,000.00 for survival damages for the conscious pain and suffering and pre-impact fear endured by Charles Price immediately before his death, to be shared equally by and between the six plaintiffs identified hereinabove; together with legal interest from the date of judicial demand until paid and for all costs of this matter.
The DOTD appeals. We affirm the decision of the trial court.

\iFACTS

The decedent, Charles Archie Price, was a guest passenger in a red pickup truck owned by Crescent Construction, and being driven by Ritney Harris. Both men were employed by Crescent, and were on their way home when the accident occurred. At the location of the accident, the highway consisted of two lanes in each direction. Mr. Harris was on the downside of a bridge when another car passed him, on the right side, and then pulled in front of his truck. Mr. Harris lost control of the truck, it crossed the median and was struck by a white pickup driven by Charles Cook.
Mr. Harris testified that, at the time of the accident, it was raining “so hard he could barely see.” As Harris slowed his vehicle, he hit a patch of standing water in the roadway. Harris testified that the water just pulled him over, causing him to lose control of the vehicle, which crossed the median.
Sgt. Reuben Berry, of the Louisiana State Police, testified that he was involved in the investigation of the accident. He was informed that the accident occurred at 4:30 p.m. He arrived at the scene at 4:57 p.m., at which time it was lightly raining. The road was wet, but there were no standing puddles. He investigated the weather conditions at the time of the accident, by talking to people on the scene and by later contacting the weather service, and he concluded that the weather was very poor, with heavy rain, at the time of the accident. The red truck hit the concrete neutral ground, and then crossed over a grassy area of the neutral ground into oncoming traffic.
The roadway had a speed limit of 45 mph. Harris told Sgt. Berry that, at the time of the accident, he was traveling at the speed limit.
[Joseph Cook, the driver of the white pickup truck, testified that he was heading east on Highway 90. He was traveling about 40-45 mph. The roadway was wet, but there were no puddles. His visibility was fine. He saw the red truck hit the neutral ground and then catapult into the air, and then into his lane, at which time he ran into the truck. He further stated that there was nothing he could have done to avoid the truck in the amount of time he was given.
James Frank, a retired Police Chief of Terrebonne Parish, testified that he was traveling east on Highway 90 at the time of the accident. He saw the red truck coming across the median from the other direction. He could see the driver of the red truck fighting with the steering wheel. Frank testified that there was a light drizzle, and that he was traveling 45-50 mph. He was able to stop in time to avoid the accident.
Mr. Raymond Burkart was qualified as an accident reconstruction expert at the trial of this matter. He testified that he visited the accident site in 1994, under weather conditions similar to those described by Sgt. Berry in his police report. He observed standing water on the bridge, which was caused by insufficient drainage to allow the water to run off. He opined that Mr. Harris lost control of his vehicle as a result of standing water on the roadway.
Mr. Burkart further testified that the road was unsafe due to the concrete barrier/curbing that was present at the time of the accident. He testified that a roadway with a speed limit of 45 mph should have more than the curb barrier; it should have a “jersey” barrier to repel cars back into the roadway *1220 and not allow them to cross into the opposite lane of travel.
Mr. Burkart also testified that he had reconstructed other accidents for litigation against DOTD, also involving standing water, in the same general area feas the accident at issue. Mr. Burkart further testified, without objection, that he returned to the site of the accident in October of 1995 and found that the roadway had been resurface and new or additional guardrails had been erected. He opined that these changes made the roadway safer.
Dr. Oscar Griffith was qualified as an expert in physics and accident reconstruction. He opined that Mr. Harris initially lost control of his vehicle due the content of water in the roadway. This control problem was compounded when the truck struck the curb. Because the barrier was insufficient there was nothing to deflect the truck back into its lane of travel and it crossed into oncoming traffic. Dr. Griffith concluded that the curb was insufficient because it was eight inches high, which was inadequate, and because it was too close to the roadway. Dr. Griffith also stated that there was no evidence of driver fault in this accident.
David Hall was qualified as an expert in highway design and traffic reconstruction. He testified that the original design of the roadway provided for a 1/8 inch cross slope for drainage. The roadway was resurfaced in 1984 and the cross slope was increased to .025 feet per foot, which was sufficient drainage. He further testified that it is to be expected that there will be standing water on the roadway when it rains. It was his opinion that the accident happened because Harris was traveling too fast, and he applied his brakes too hard, causing his truck to fish tail and resulting in loss of control of the truck. Mr. Hall stated that he was provided with the complaint record for the area in question, and that he reviewed the reports of seven complaints occurring in the area. He did not review all the reports, consisting of thousands of pages, which encompassed a ten mile stretch of the roadway.
kMr. Hall also testified that the American Association of State Highway and Transportation Officials (AASHTO) guidelines in effect at the time of the accident provided that a barrier curb generally should not be used where design speeds exceed 40 mph. Hall testified that in his opinion the guidelines referred to a 6-8 inch curb. In this case, the concrete curb was about ten inches, which he considers to be a barrier curb. He further opined that in his opinion, a 6 to 8 inch curb would have been adequate for the roadway.
Robert Roth, District Maintenance Engineer for the DOTD in the New Orleans Metropolitan area, testified that the accident site was included in his district. He testified that typically, roadway complaints are received by telephone. They are filed in chronological order by Parish, not by location. No complaint records are numbered, and there is no way to verify misfiling or other error. He further testified that the internal reports of DOTD workers are not submitted on the same forms as external complaints.

ANALYSIS

We initially note that the reviewing court may not set aside the fact finder’s findings of fact in the absence of manifest error or unless they are elearly wrong. Furthermore, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). Thus, where there are two ^permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra.
With regard to plaintiff’s cause of action against the DOTD, the Court in Bessard v. State, Dept. of Transp. and Development, 94 0589 (La.11/30/94), 645 So.2d 1134, 1136, said:
A plaintiff may proceed against DOTD under theories of negligence or strict liability. A strict liability claim against DOTD *1221 is governed by LSA-R.S. 9:2800, which limits the strict liability of public entities by requiring proof of the entity’s actual or constructive knowledge of the defect which caused the damage. Proof of scienter is the only factor which distinguishes proof of negligence from proof of strict liability. Thus, the burden of proof is the same under either theory when DOTD is the defendant. The plaintiff must show (1) the property that caused the damage was in the custody of DOTD, (2) the property was defective because it had a condition that created an unreasonable risk of harm, (8) DOTD had actual or constructive knowledge of the risk, and (4) the defect in the property was a cause in fact of plaintiffs injuries. (Citations, footnote omitted).
At the time of trial of this matter, the one remaining defendant was the State, through the Department of Transportation and Development. The trial court, in finding the DOTD liable for the accident, found that the roadway was defective, creating an unreasonable risk of harm, and that DOTD had actual or constructive knowledge of the defects at the time of the accident. The trial court further found that Mr. Harris was not comparatively at fault in causing the accident.
In this ease, there was no dispute that the DOTD had sole custody and ownership of Highway 90 at the site of the accident. On appeal, DOTD argues that the trial court erred in its findings that plaintiff proved that the roadway was ^defective[1] and in its finding that DOTD had actual or constructive knowledge of the defect.[2] Appellants also allege that the trial court erred in failing to find any comparative fault on the part of Ritney Harris in the cause of the accident.[3]
In determining that the roadway was defective, the trial court reviewed the evidence presented and found that:
It is the conclusion of this Court that the plaintiffs clearly established, by more than a mere preponderance of the evidence, that the section of Highway 90 in question was defective in nature (because of the existence of standing water, lack of appropriate measures to properly drain the water from the highway, the nature and construction of the 8” curb separating the left lane of travel from the oncoming lanes of travel, and the absence of an appropriate curb or guardrail) and that these defects created an unreasonable risk of harm.
Mr. Harris testified that he lost control of his vehicle when he hit standing water in the roadway. Courts have held that excess or standing water in the roadway is unreasonably dangerous. Shephard on Behalf of Shepard v. Scheeler, 96-1690 (La.10/21/97) 701 So.2d 1308. Furthermore, the experts for plaintiffs testified that the curbing at the site of the accident was unreasonably dangerous. It is apparent from the trial judge’s reasons that she found the expert witnesses presented by the plaintiff more credible than the expert presented by defendant. This is within the province of the trial court. Martin v. East Jefferson General Hosp., 582 So.2d 1272 (La.1991); Nicoll v. LoCoco, 97-83 (La.App. 5 Cir. 10/28/97), 701 So.2d 1062. We cannot say that the trial court committed manifest error in her findings.
bln addition, we note that defendant’s own witness admitted that the curbing in place on the roadway was not in compliance with guidelines set forth by AASHTO. The DOTD is required to meet these standards whenever possible. La. R.S. 43:35; Williams v. City of Monroe, 27,065, 27,066 (La.App. 2 Cir. 7/3/95), 658 So.2d 820. Cf. Foster v. Conagra Poultry Co., 95-793 (La.App. 3 Cir. 2/14/96), 670 So.2d 471.
The trial court likewise found that the DOTD had actual and constructive knowledge of the defective condition. The DOTD admitted in interrogatories that there were thousands of complaint/maintenance records for this portion of the roadway. Plaintiffs expert testified that he was involved in several litigations concerning this area of the highway. It is clear that the curbing as it existed *1222 at the time of the accident was not in compliance with La. R.S. 48:35. We can find no manifest error in this ruling of the trial court.
In its third assignment of error, DOTD also argues that the trial court erred in failing to assess comparative fault against Mr. Harris. The trial court also found that the sole cause of the accident was the defective condition of the roadway, and that “the evidence [did] not reflect that Mr. Harris was negligent in any respect.”
Allocation of fault is a factual determination subject to the manifest error rule. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305. We find no manifest error in the trial court’s failure to assess any percentage of fault to Mr. Harris.
For the above discussed reasons, the judgment of the trial court is affirmed. All costs are assessed against appellant.
AFFIRMED.
GAUDIN, J., dissents with reasons.

. Assignment of error number two in appellant’s brief.

. Assignment of error number one in appellant’s brief.

.Assignment, of error number three in appellant’s brief.