746 So.2d 812 (1999)
Joan GANUCHEAU
v.
WINN DIXIE LA., INC. d/b/a Winn Dixie Supermarket.
No. 99-CA-432.
Court of Appeal of Louisiana, Fifth Circuit.
November 10, 1999.
Rehearing Denied December 6, 1999.
Writ Denied February 18, 2000.
*813 Paul M. Lavelle, James M. Benson, Landry & Lavelle, New Orleans, for Defendant/Appellant.
Albert J. Nicaud, Nicaud, Sunseri & Fradella, Metairie, for Plaintiff/Appellee.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and MARION F. EDWARDS.
GOTHARD, J.
Plaintiff, Joan Ganucheau, filed suit for injuries sustained when she slipped and fell at defendant's store. After trial on the merits, the jury ruled in favor of plaintiff and against defendant, finding that plaintiff was entitled to $65,000.00 in general damages (past, present and future pain and suffering) and $85,000.00 in special damages (past, present and future medical expenses); this verdict was made the judgment of the trial court. Defendant filed motions for judgment notwithstanding the verdict, for remittitur, and for new trial, which were denied by the trial court. Defendant appealed, and plaintiff answered the appeal. For the following reasons, we amend the decision of the trial court to award to Mrs. Ganucheau $185,000.00 in general damages and $40,000.00 in past, *814 present and future medical expenses. As amended, we affirm the decision of the trial court.

FACTS
This incident in question occurred on November 8, 1995, at the Winn Dixie Marketplace located at 8601 Jefferson Highway. Ms. Ganucheau testified that on her way into the store, she saw a Winn Dixie employee carry a leaking gallon jug out of the store. He put the jug into a garbage can. She stated that she entered the store and paid no further attention to the incident. After she had been in the store for about fifteen minutes, she approached the dairy aisle. She saw a man whom she believed to be a Winn Dixie employee dragging a wet mop down the aisle, about thirty feet from where she was. Immediately after, she slipped and fell on the floor, sustaining the injuries at issue in this suit.
Ronald Bouligny was the assistant manager at the store on the day of plaintiffs fall. He testified that, prior to the fall, a patron of the store gave him a one-gallon jug of water which had been leaking, and which had been in the patron's basket while she shopped in the store. He brought the jug outside of the store and threw it away. A Winn Dixie employee mopped the area by the cash registers, while he took some paper towels and wiped the trail of water left by the leaking jug. The trail went through the dairy aisle. About fifteen minutes later, Ms. Ganucheau fell. Upon arriving at the dairy aisle, he noticed a long mop streak where plaintiff said she had fallen.
Mr. Bouligny further testified that it was Winn Dixie's procedure, upon discovery of a hazardous condition, to block off or guard the area until the condition could be resolved. He stated that he did not post a Winn Dixie employee or block the area with the water trail before Ms. Ganucheau entered the dairy aisle.
As a result of the fall, Ms. Ganucheau suffered knee, hip and back injuries. She also developed antral gastritis as a result of the anti-inflammatory medication she took to treat her injuries.
Dr. Dan Joachim, a specialist in internal medicine, testified that he was plaintiffs treating physician, both before and after the fall. She initially sought treatment three days after her fall at the store. She was complaining of lower back pain, right knee pain, and hip pain. His examination revealed effusion in the knee. X-rays of the right knee and the hip were taken, as there was a possibility that she had sustained a hip fracture. Two months later, she underwent right knee replacement performed by Dr. Charles Johnson. Dr. Joachim opined that the fall at the store was the cause of Ms. Ganucheau's back pain, and the cause for the necessity of the knee replacement.
Dr. Joachim next saw plaintiff in April of 1996, at which time she was diagnosed with antral gastritis, caused by the medications she was taking. By October of 1997, the condition had progressed to a point where she was hospitalized for a G.I. bleed. Colon surgery was recommended to control the G.I. bleeding.
Dr. Joachim saw Ms. Ganucheau in October of 1997, a few weeks before the trial of this matter. At that time, she had elected to defer the colon surgery, because she was helping to take care of her older sister, who'd had a stroke. She was still complaining of back pain at that time.
Dr. Charles Johnson, an orthopedic surgeon, testified that he first saw plaintiff on November 16, 1995, on referral from Dr. Joachim. At that time, she related to him that she had a history of right knee degenerative problems and a history of back pain. She told him that she had fallen on her right knee and left hip. There was physical evidence of a traumatic injury to the right knee. He obtained X-rays of her right knee, left hip and back. The X-rays of the right knee showed complete joint-space collapse with a considerable amount of valgus (knock-knee). The X-rays of her *815 lower back showed lumbar spine disease, and a considerable amount of collapse of the disc space. The pelvic X-ray showed that there were no fractures. Dr. Johnson opined that it was more probable than not that the fall at Winn Dixie caused pain and injury to Ms. Ganucheau's right knee, lower back and left hip. At that time, Dr. Johnson told plaintiff that her only real treatment option was right knee replacement. Surgery was performed in January of 1996. During that time, Ms. Ganucheau was prescribed pain killers.
Plaintiff recovered from the knee surgery, but in June of 1996 she was complaining of back pain. She was given an injection to alleviate the pain. In her visit in January of 1997, she complained of considerable difficulty with her lower back. A back X-ray taken revealed severe degenerative changes in all lumbar segments with sever scoliosis. Sometime in October, she was given an epidural steroid injection.
In March of 1998, she again saw Dr. Johnson. At that time, she was still suffering from back pain, and she was given a second epidural steroid injection.
Dr. Johnson next saw Ms. Ganucheau in October of 1998, shortly before trial. At that time, she was having difficulty with her left knee.
Dr. Johnson testified that Ms. Ganucheau impressed him as a person with a high pain tolerance who did not complain very much. He further stated that plaintiff was a person with degenerative problems before the accident, but the fall at Winn Dixie was "just the straw that broke the camel's back. It finally got to the point where that injury pushed [her] over the edge. And that's both with the back and the knee."

DISCUSSION
In this appeal, defendant challenges the jury's finding of liability and the amount of damages awarded, and further alleges that the trial court erred in denying its Motion for Judgment Notwithstanding the Verdict.
We initially note that the reviewing court may not set aside the fact finder's findings of fact in the absence of manifest error or unless they are clearly wrong. Furthermore, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). Thus, where there are two views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra.
A motion for a JNOV may be granted only if the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable jurors could not arrive at a contrary verdict. Powell v. Regional Transit Authority, 96-0715 (La.6/18/97), 695 So.2d 1326. If the jury's verdict is one which reasonable people could have rendered or if the trial court is convinced that, under the evidence, reasonable minds could differ as to the amount of damages, the granting of a JNOV is improper. State of Louisiana, Dept. of Transp. and Dev. v. Scramuzza, 95-786 to 95-796 (La.App. 5 Cir. 4/30/96), 673 So.2d 1249, affirmed in part, 96-1796, 96-1820 (La.4/8/97) 692 So.2d 1024.
Defendant first alleges that there was manifest error in the jury's finding that Winn Dixie was liable. In the alternative, defendant alleges that the jury erred in failing to assess comparative fault to plaintiff.
La. R.S. 9:2800.6, at the time of plaintiff's accident in 1995, provided in part that:

*816 B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and,
(3) The merchant failed to exercise reasonable care.
This statute requires that the plaintiff prove the hazardous condition which caused the fall presented an unreasonable risk of harm, the merchant either created or had actual or constructive knowledge of the condition which caused damage prior to its occurrence, and the merchant failed to exercise reasonable care; reasonableness of the merchant is at issue. Franovich v. K-Mart Corp., 94-1039 (La. App. 5 Cir. 3/28/95), 653 So.2d 695.
It has been said that "A wet floor in a grocery store created an unreasonable risk of harm to the patrons and that the risk of injury was reasonably foreseeable." Carter v. Brookshire Grocery Co., 29,166 (La. App. 2 Cir. 2/26/97), 690 So.2d 933, 937, writ denied, 97-0782 (La.5/1/97), 693 So.2d 734.
In the present case, Ms. Ganucheau testified that she slipped on some water. Winn Dixie's manager testified that he had been in the area prior to the fall wiping up a water spill, and that he saw a mop streak immediately after the fall. He further admitted that, despite the presence of the water he wiped up, no cones or attendants were placed at the scene of the water trail. We cannot say that the jury committed manifest error in finding that Winn Dixie failed to use reasonable care.
Winn Dixie next argues that the jury erred in failing to find that plaintiff was comparatively negligent, because she testified that she saw the employee with the mop prior to entering the dairy aisle. Allocation of fault is a factual determination subject to the manifest error rule. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305; Cook v. Crescent Const. Co., 97-971 (La.App. 5 Cir. 12/16/98), 722 So.2d 1217; writ denied, 99-0477 (La.4/9/99) 740 So.2d 632; Carter v. Brookshire Grocery Co., supra. The jury heard Ms. Ganucheau's testimony, when she said that she saw the employee thirty feet away, and found that her failure to notice the water was not unreasonable. Again we cannot say that such a finding was unreasonable.
Winn Dixie next alleges that the trial court erred in awarding $85,000.00 for past, present and future medical expenses. Defendant points out that plaintiff submitted medical bills for past treatment totaling $16,844.97, and therefore the jury awarded future medical expenses of $68,155.03. It is this award that defendant alleges is excessive. We agree.
In order to recover future medical benefits, the plaintiff must prove that these expenses will be necessary and inevitable. Future medical expenses must be established with some degree of certainty and must be supported with medical testimony and estimation of probable cost. However, when the need for future medical care has been demonstrated but cost is not susceptible of determination, the court may make a reasonable award.

Hopstetter v. Nichols, 98-185 (La.App. 5 Cir. 7/28/98), 716 So.2d 458, 462, writ denied, 98-2288 (La.11/13/98) 731 So.2d 263.
The plaintiff established at the trial that her prior medical expenses, including those expenses for the knee replacement, *817 were $16,844.97. She further established that conservative treatment for her back injury would be required for the rest of her life. Her treating internist testified that he thought she would need quarterly doctor visits, at $60.00, plus quarterly shots at $60.00, and approximately $50.00 per month in medication. Plaintiff further established that surgery to correct a G.I. bleed caused by medications was a possibility. However, plaintiff did not establish the need for further knee replacement surgery with any degree of certainty. Based on the evidence presented, we find that the jury award of $85,000.00 was excessive, and we reduce that amount to $40,000.00.
Plaintiff answered the appeal, and argues that the general damage award of $65,000.00 is excessively low. Our review of such an award is set out in Youn v. Maritime Overseas Corporation, 623 So.2d 1257 (La.1993), wherein the Supreme Court explained that the initial inquiry by this court is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the vast discretion of the trier of fact. It is only after such a determination of abuse of discretion is made that a resort to prior awards is appropriate.
Using that standard of review, and considering the circumstances of the instant case, we agree with the appellant that the award of $65,000.00 for past, present and future pain and suffering is inadequate to compensate plaintiff for her injuries, and therefore, we find that the jury abused its discretion in the award of general damages. The evidence proved that the plaintiff's knee and back injuries will cause difficulty and pain for the rest of her life. In addition, the plaintiff has developed gastrointestinal injuries, as a result of the medications taken, which require surgery to correct. After a review of similar cases, we find that an award of $185,000.00 is the lowest award that was reasonably within the discretion afforded to the jury for the knee and back injuries as well as the gastrointestinal injury, and we increase the award for past and future pain and suffering from $65,000.00 to $185,000.00. Compare, Carpenter v. Hartford Fire Ins. Co., 537 So.2d 1283 (La.App. 2 Cir.1989).

CONCLUSION
For the above discussed reasons, we affirm the jury verdict finding defendant liable for the plaintiff's injuries. We amend the award of damages to award $40,000.00 for past, present and future medical expenses and $185,000.00 for past, present and future pain and suffering. Costs of this appeal are assessed against the defendants.
AMENDED AND AFFIRMED.