JjSOL GOTHARD, Judge.
Plaintiffs, Darren and Shannon Estes, appeal a jury decision which found no liability on the part of defendant, Wal-Mart Stores, Inc. (Wal-Mart), and dismissed plaintiffs’ slip and fall lawsuit. For reasons that follow, we affirm.
Plaintiffs filed this slip and fall action against Wal-Mart to recover damages for physical injuries sustained by Mr. Estes in a fall in the pet department at Wal-Mart. Mrs. Estes asserted an action for loss of consortium, service and society with her husband. After a three day jury trial, the trial court entered a judgment in accordance with the answers to jury interrogatories which found in favor of Wal-Mart and dismissed plaintiffs’ actions. After a motion for a judgment notwithstanding the verdict, or in the alternative, a new trial was considered and denied by the trial court, plaintiffs filed this appeal.
13At trial the jury heard testimony from Mr. Estes. He stated that he went to Wal-Mart on the day of the incident to purchase glass cleaner for his aquarium. Because he was unable to find the product, he approached an employee to ask for assistance. He waited a short time while the employee helped another customer and then obtained directions. Mr. Estes testified that as he stepped off the mat on which he was standing, he began to slip. He attempted to regain his balance by reaching out for a shelf to his right, to no avail. He landed with great force on his left lower back. Mr. Estes testified that there was a clear liquid on the floor when he fell. When he attempted to get .up after the fall, his shoulder was wet from the substance, which smelled like aloe vera. Mr. Estes testified that he returned to the store about two months after the accident to identify the substance and decided it was Stress Coat. On cross-examination, Mr. Estes admitted that he did not mention his shoes, which he described as “flip flops”, being wet in a deposition because he felt that he slipped in the liquid on the floor. He explained that he did not know the mat on which he was standing prior to the fall was wet until an employee of Wal-Mart stated that fact in a deposition. Mr. Estes testified that there was no warning or sign to inform customers that the mat in front of the fish tanks was wet.
A Wal-Mart employee, who Mr. Estes later learned was Dwayne Hill, came over immediately after the fall and told Mr. Estes not to try to move until he got back with help. When Mr. Hill returned with a manager, Mr. Estes tried to get up. When he did he felt a sharp, burning pain in his back. Someone called Mr. Estes’s wife and an ambulance, and Mr. Estes was taken to Kenner Regional Medical Center.
14Pwayne Hill, who was employed in the pet department of Wal-Mart for about one week on the day of Mr. Estes’s fall, testified that there was a mat in the aisle in front of the fish tanks which was about four feet wide. The purpose of the mat was to collect and contain any water which might spill out of the tanks. Mr. Hill stated that he witnessed Mr. Estes’s fall. According to Mr. Hill’s account of the incident, Mr. Estes came up to ask for assistance in finding a certain product. Mr. Hill, who was assisting another customer at the time, directed Mr. Estes to the correct location. During the conversation between Mr. Hill and Mr. Estes they were both standing on the mat, which Mr. Hill *1021 described as “damp.” Mr. Estes, who was wearing “flip-flop” shoes, walked off in the direction indicated by Mr. Hill. When Mr. Estes was about ten feet away, off the mat and walking on the tile floor, he slipped. Mr. Estes made an attempt to regain his balance by grabbing onto a shelf to his right. The attempt was unsuccessful and Mr. Hill fell onto his back, knocking several items from the shelf. Mr. Hill immediately notified a manager and an investigation was conducted. Mr. Hill testified that he had “zoned” the area shortly before the incident and did not find anything on the floor. Mr. Hill thought is was possible that Mr. Estes’s wet shoes caused him to slip.
Delores Numnum, a maintenance worker at Wal-Mart, testified that the store was cleaned thoroughly every morning at 7:00 a.m. During the rest of the day, she walks around the store making certain that it is clean. Occasionally, a spill will be reported, and she is directed to it by a supervisor. Ms. Numnum further explained that when a spill is discovered by an employee, the employee stays at the site to insure the safety of the | ¡¡customers until the maintenance worker arrives to clean it up. Signs and cones are put up around the area to warn customers of the hazard.
Ms. Numnum testified that on the day of the accident, she had completed a safety sweep of the pet area and had gone to the toy department and then to the hardware department when she heard a call of “code 40 and code white” in the pet department announced over the intercom system. She explained that those codes indicated there was an injury and a manager was required. Ms. Numnum estimated that her safety sweep of the pet department occurred about thirty minutes before the fall. She testified that in her sweep of the pet area, she was looking for spilled birdseed on the mat in the pet department because that was a frequent problem. However, she saw nothing on the mat and it did not appear to be wet. She further stated that she did not see anything in the aisles leading up to the aquarium area. She also explained that on the occasions when the mat was wet, it required only a paper towel to clean it up. Ms. Numnum testified that the employees of the pet department also help to keep the area clean.
Mrs. Estes testified that she received a call from a Wal-Mart employee telling her that her husband had been injured and was being taken to the hospital. When she arrived at the store, she found her husband lying on the floor in pain. Mr. Estes told his wife he had slipped and landed on his back. Mr. Hill informed Mrs. Estes they had tried to get her husband to sit in a chair. She became angry at this point because she knew from her physical education background that an injured person should not be moved until the extent of the injury can be assessed. It was at this point that the manager called an ambulance. On cross-examination, Mrs. Estes testified that she did | finot see or smell a liquid substance on the floor. However, she did recall her husband saying his shirt was wet.
Trumell Sykes, who was a stock clerk at Wal-Mart assigned to the pet department on the day of Mr. Estes’s fall, testified that his duties included restocking the shelves, and making certain the floors and aisles were clear of debris. He stated that he walked up the aisle in which Mr. Estes fell about five minutes before the incident. When he got to the scene of the fall, Mr. Sykes saw Mr. Estes lying on his back on the floor. There was “some slimy coat stuff’on the floor and on the back of Mr. Estes’s shirt. After the ambulance removed Mr. Estes, Mr. Sykes and other store personnel determined that the solu *1022 tion spilled on the floor came from a near empty bottle of Stress Coat on a nearby shelf. Mr. Sykes estimated that the fall occurred about twenty-four feet from the fish tanks. He further stated that Mr. Estes indicated he slipped on something on the floor. Mr. Estes made no mention of wet shoes causing the accident. Mr. Sykes photographed the area of the accident and brought the bottle to personnel, where it was labeled.
The plaintiffs presented rebuttal testimony from Mrs. Estes. She stated that she recalled seeing Mr. Hill and a manager named “John” at the scene. She did not recall seeing Mr. Sykes, or anyone else taking pictures. She repeated that she did not see anything on the floor where her husband fell.
After hearing all of the testimony and viewing the exhibits filed in this matter, the jury returned a verdict finding that Wal-Mart was not negligent. Plaintiffs appeal.
|7In brief to this court, plaintiffs assign three errors. Initially, plaintiffs argue the jury committed manifest error and was clearly wrong in finding no merchant liability on the part of Wal-Mart.
ESA-R.S. 9:2800.6 as it read in 1995 at the time of this accident provided:[1]
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, pri- or to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) “Constructive notice” means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
The existence or non-existence of an unreasonably dangerous condition is a question of fact to be decided by the jury. Dupre’ v. Maison Blanche, Inc., 97-0652 (La.App. 1 Cir. 4/8/98), 712 So.2d 567, writ denied, 98-1239 (La.6/19/98), 721 So.2d 471. Therefore, the ultimate decision of the existence of negligence is a factual finding which cannot be reversed absent a | «showing that the finding is manifestly erroneous or clearly wrong. Castille v. Wal-Mart Stores, Inc., 98-1216 (La.App. 5 Cir. 3/30/99), 731 So.2d 904.
For this court to reverse the jury in this matter, there must be a showing that plaintiffs proved, by a preponderance of evidence, that Mr. Estes fell due to a hazardous condition which created an unreasonable risk of harm, or that Wal-Mart either created or had actual notice of the condition prior to the occurrence. Franovich v. K-Mart Corp., 94-1039 (La.App. 5 Cir. 3/28/95), 653 So.2d 695.
The issue to be resolved on review is not whether the jury was right or *1023 wrong, but whether the conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Ganucheau v. Winn Dixie La. Inc., 99-432 (La.App. 5 Cir. 11/10/99), 746 So.2d 812, writ denied, 99-3641 (La.2/18/00), 754 So.2d 972. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). Thus, where there are two views of the evidence, the jury’s choice between them cannot be manifestly erroneous or clearly wrong, Stobart, supra. Recently, in LeJeune v. Union Pacific R.R., 97-1843 (La.4/14/98), 712 So.2d 491, 494, the Supreme Court summarized our mandate in reviewing a jury verdict as follows:
The court of appeal may not disturb the conclusions reached by a jury regarding factual matters in the absence of “manifest error” or unless a particular finding of fact was “clearly wrong.” A two-part test is used in making this determination. The court of appeal may only reverse the trier of fact if: (1) it finds from the record that a reasonable factual basis does not exist for the finding of the jury, and (2) it further 1 fldetermines that the record establishes that the finding is clearly wrong or manifestly erroneous. The inquiry is not whether or not the jury was right or wrong, but whether its conclusions were reasonable ones. As long as the jury’s factual findings are reasonable, the court of appeal may not reverse even if it is convinced that it would have weighed the evidence differently. (Citations omitted.)
In the instant case there is conflicting testimony as to the cause of the fall. Mr. Estes could have slipped when stepping off of a wet mat in front of the fish tanks, or in spilled Stress Coat further down the aisle. There is conflicting testimony as to how far away from the mat Mr. Estes was when he began to slip, and whether the Stress Coat found on the floor and on the back of Mr. Estes’s shirt caused the fall or was spilled during the fall. Further, given the testimony presented, the jury could have found that, whatever caused the fall did not give rise to a finding of liability because the elements of unreasonable risk and knowledge were not proven. Accordingly, we cannot find that the jury’s determination that Wal-Mart was not liable was manifestly erroneous or clearly wrong.
In the final two assignments of error, plaintiffs assert the trial court erred in failing to grant a new trial. The plaintiffs filed a “Motion for Judgment NOV or alternatively Motion for New Trial” in the trial court in which they assert the jury verdict was contrary to the law and evidence, and that “the jury foreman exerted undue outside influence upon the jury in an inappropriate and biased manner, which tainted the process.”
Both grounds asserted by plaintiffs in their motion are peremptory grounds for the grant of a new trial. LSA-C.C.P. article 1972(1) provides that a new trial shall be granted, “(w)hen the verdict or judgment appears clearly contrary to the law and evidence.” A trial judge should grant a |inmotion for new trial when the judge’s examination of the record, while exercising his discretion, convinces him that the judgment would result in a miscarriage of justice. Perkins v. K-Mart Corp., 94-2065 (La.App. 1 Cir. 6/23/95), 657 So.2d 725, 731, writ denied, 95-2058 (La.11/13/95), 662 So.2d 477; Zatarain v. WDSU-Television, Inc., 95-2600 (La.App. 4 Cir. 4/24/96), 673 So.2d 1181, 1183. If the verdict is supportable by any *1024 fair interpretation of evidence, a new trial should be denied. Gibson v. Bossier City General Hospital, 594 So.2d 1332, 1336 (La.App. 2 Cir.1991); Zatarain v. WDSU, supra.
In the discussion of plaintiffs’ first assignment, we found that the verdict of the jury could not be overturned because it is supportable by a fair interpretation of the evidence. Accordingly, we find no error in the trial court’s decision to deny plaintiffs’ motion on this ground.
In support of the allegation of jury misconduct, plaintiffs offered an affidavit from Bryan Johnson, a juror, attesting to various words and actions of the jury foreman. Defendant challenged the affidavit as improper testimony by a juror as to jury deliberations pursuant to LSA-C.E. article 606(b). Plaintiffs argued that the affidavit shows a pattern of misconduct which began before deliberations and continued afterward and should be considered in its entirety. In the alternative, plaintiffs argued that at least one attestation, regarding pre-deliberation behavior, should be considered. That attestation was that; “(t)he foreman whom I sat next to on numerous occasions, during the trial, but before the judge released us to deliberate, made comments concerning the evidence which indicated that he had already formed an opinion in favor of the defendant Wal-Mart (sic) and this was communicated to me.” The trial court ultimately decided that the affidavit Incould not be considered. The court also stated; “and even if there was some misconduct before the jury’s deliberations, I don’t consider that affidavit to inform me of misconduct that would lead to the level of gross misconduct that would warrant me disturbing a jury verdict.... ”
Pursuant to LSA-C.C.P. article 1972(3), peremptory grounds for granting a new trial in a civil action exist if it is shown that “the jury was bribed or behaved improperly so that impartial justice has not been done.” In other incidents the trial court is granted wide discretion in deciding whether a new trial should be granted where allegations of jury misconduct are made. LSA-C.C.P. article 1973. Improper behavior by a juror or jury is not defined and must be determined by the facts and circumstances of each particular case. Karagiannopoulos v. State Farm Fire & Cas. Co., 94-1048 (La.App. 5 Cir. 11/10/99), 752 So.2d 202, writ denied, 99-2866 (La.12/10/99), 752 So.2d 165, reconsideration denied, 99-2866 (La.2/11/00), 754 So.2d 926, writ denied, 99-3474 (La.2/11/00), 754 So.2d 940; Uriegas v. Gainsco, 94-1400 (La.App. 3 Cir. 9/13/95), 663 So.2d 162, 170, writ denied, 95-2485 (La.12/15/95), 664 So.2d 485, and cases cited therein.
However, the presence of strong, highly opinionated persons on a jury has been held not to constitute improper behavior. See, Stockstill v. C.F. Industries, Inc., 94-2072 (La.App. 1 Cir. 12/15/95), 665 So.2d 802, writ denied, 96-0149 (La.3/15/96), 669 So.2d 428; Theriot v. Theriot, 622 So.2d 257 (La.App. 1 Cir.1993), writ denied, 629 So.2d 1138 (La.1993).
LSA-C.E. article 606(B) provides:
B. Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the 112course of the jury’s deliberations or to the effect of anything upon his or any other juror’s mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether any outside influence was improperly brought to bear *1025 upon any juror, and, in criminal cases only, whether extraneous prejudicial information was improperly brought to the jury’s attention. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.
As explained by the Court in Uriegas v. Gainsco, supra, 663 So.2d at 170-171:
It is well-settled that affidavits and other testimony by jurors cannot be used as evidence to impeach their verdict. Furthermore, invasive scrutiny of a juror’s individual deliberation or investigation of a jury’s collective reasoning for reaching a verdict are disfavored in the law as a matter of public policy. The reason for this rule is to promote the jury’s discovery of the truth by preventing litigants from invading the privacy of the jury room. (Citations omitted.)
We have reviewed the entire affidavit. It makes no mention of outside influence, or of threats or bribery by the jury foreman. Under these circumstances, we find no abuse of discretion in the trial court’s finding that impartial justice was done or in the decision to deny the motion for new trial.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.

. This statute was amended in 1996 to its current form. However, those amendments only apply to causes of action which arise as of the effective date of the amendment and are inapplicable here.